The Illinois Central Railroad Company, Appellant, *vs.*
William Hasenwinkle, Appellee.

*Opinion filed February 20, 1908.*

1. Names—*middle initial is not legally part of a name.* A middle initial is not legally a part of a name, as the law recognizes but one christian name; and while a letter of the alphabet does not constitute a name, yet the initial letter of the christian name is so commonly used that it is regarded as an abbreviation of the christian name of the person intended.

2. Same—*notice given to "J. H. Burtis" is the same as if given to "J. Burtis."* Notice of a condemnation proceeding given to one "J. H. Burtis," who is described as being a non-resident and the owner of the land condemned, means the same as a notice to "J. Burtis;" and proof that the land owner was named Joseph F. Burtis does not justify any inference that the notice must have been served upon a resident of the county whose name was Jacob H. Burtis and who had no interest in the land.

3. Eminent domain—*when a condemnation proceeding cannot be overthrown.* A condemnation proceeding whereby a railroad company acquired its right of way, which it has improved for railroad purposes and occupied for over fifty years without question by the owner of the land or any one in privity with him, cannot be overturned by mere proof that the name given in the notice of the condemnation suit contained the same initial letters as were in the name of a person who had no interest in the land and that the middle initial of the owner was not the one given in the notice.

4. Limitations—*what is not adverse possession.* Unloading lumber from cars and piling it upon an unenclosed portion of a railroad right of way without objection by the railroad company, cutting grass, tying horses out to graze, and similar acts, do not constitute adverse possession of the premises, particularly where no notice was ever given to the company that any claim of right was being asserted.

Appeal from the Circuit Court of McLean county; the Hon. Colostin D. Myers, Judge, presiding.

Charles L. Capen, (John G. Drennan, of counsel,) for appellant.

Rowell & Lindley, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The Illinois Central Railroad Company, the appellant, brought this action of ejectment in the circuit court of Mc-Lean county against William Hasenwinkle, appellee, to recover possession of a strip of land fifty feet in width lying west of its railroad and claimed by it as a part of its right of way through out-lots 72 and 73 of the village of Hudson. The defendant pleaded not guilty and the twenty years Statute of Limitations as to that part of the strip in out-lot 72 and disclaimed as to the remainder. A jury having been waived there was a trial by the court, which resulted in a finding and judgment in favor of the defendant as to that part of out-lot 72 described in the declaration and for the plaintiff as to the other lands concerning which defendant had disclaimed, and the costs were taxed against defendant.

The plaintiff, to sustain its declaration, proved that Hudson was laid out for the Hudson Colony in the year 1838. The north line of Franklin street on the plat is the south line of out-lot 72, and the out-lot is 628.4 feet in length from east to west, 73.26 feet wide on the east line and 141.75 feet on the west line. In the year 1852 the plaintiff's railroad was laid out, running north and south across the out-lot, with a right of way of 200 feet in width, the east line of the right of way being 360 feet west of the east line of the out-lot and a strip 68.4 feet wide was left west of the right of way. There was a proceeding to condemn the right of way, and at that time the record title to the out-lot was in Joseph F. Burtis, of Queens county, New York. He had made a conveyance of the out-lot on April 1, 1852, to Valentine, Belgen & Co., but the deed was not recorded until June 18, 1856, and he was the proper party defendant to the condemnation. All the files and papers of the condemnation proceeding were destroyed by fire by the burning of the McLean county court house in June, 1900, and the only record remaining consists of the orders en-

232—15

tered of record in the bound volume, with their recitals. The record so remaining contains an order of the circuit court dated April 24, 1852, in the matter of the petition of the Illinois Central Railroad Company for right of way, against Edward Hopping, J. H. Burtis and others. The order recites the presentation by the plaintiff of its petition for the appointment of commissioners, as by law required, to ascertain, appraise and assess the compensation which may accrue to J. H. Burtis and to other unknown persons having an interest in out-lots in the town of Hudson, in consequence of the location and establishment of the railroad through the lots described and set forth in the petition, out-lot 72 being supposed to be owned by J. H. Burtis and others unknown. The order further recites that it appeared to the satisfaction of the court, by proofs on file, that due and lawful previous notice had been given to all the said and before named persons, and others unknown, of the presentation of the petition, and the court having appointed William H. Hanna, an attorney at law of the court, to appear and defend in said cause for the said defendants, all of whom were non-residents of the State, he appears for said defendants, and the court appoints commissioners, and provides that after being duly sworn they proceed to make such appraisement and assessment and make due return thereof. On June 9, 1852, the plaintiff filed the map and profile required by its charter in the recorder's office of McLean county, showing a width of one hundred feet on each side of the center of its main track through Hudson. The plat shows J. F. Burtis as the owner of out-lot 72. The record shows that the commissioners on October 2, 1852, assessed the damages occasioned to J. H. Burtis and others unknown by reason of the location of the railroad through out-lot 72 at one dollar, and the record shows that the commissioners were duly sworn, and that the lands proposed to be taken were of the width of one hundred feet on each side of the railroad, measuring from the center of the track,

as shown by the recorded map. The report is followed by a decree which recites the filing of the report; that due notice had been given and all and singular the requirements of the law in that behalf had been fully complied with; that the railroad had been located and established over and through out-lot 72, including and comprising land of the width of one hundred feet on each side of the railroad, as shown by the map of record in the office of the recorder; that the commissioners had assessed in favor of J. H. Burtis, for all compensation and damages, the sum of one dollar and that the petitioner had paid the same into court. It was therefore ordered that the railroad company enter upon, have and enjoy all the rights, privileges, franchises and powers with respect to the lands which were by the statute in that behalf made and provided.

The proceedings, as shown by the record, were in every respect regular and sufficient to confer title upon the plaintiff if the court acquired jurisdiction of the owner. The position of counsel for the defendant and the finding of the court was that the judgment was void, for the reason that the record title was in Joseph F. Burtis and the notice was given to J. H. Burtis. The court held a proposition submitted by the defendant that the J. H. Burtis named in the condemnation proceeding did not, at the time of the pendency of said proceeding, and never did, have any ownership or interest in out-lot 72; that service of process or notice to him in no way affected or bound Joseph F. Burtis, and the decree or order of the court in said proceeding as to said out-lot was null and void because there was no service of process or notice of said proceeding given to the lawful owner of the out-lot.

The law presumes nothing in favor of the jurisdiction of a court exercising special statutory powers, such as those given by the statute under which the court acted, (*Chicago and Northwestern Railway Co.* v. *Galt,* 133 Ill. 657,) and the record must affirmatively show the facts necessary to

give jurisdiction. The record must show that the statute was complied with and the land condemned in the mode thereby prescribed, and notice must be given to the owner. (*Smith* v. *Chicago, Alton and St. Louis Railroad Co.* 67 Ill. 191.) In this case the record shows that the statutory notice was given to J. H. Burtis, a non-resident, and that William H. Hanna, an attorney at law, was appointed to appear for him, as provided by the statute, and he did appear. The defendant proved that there was a man named Jacob H. Burtis, who was a resident of Hudson township and who never owned or had any interest in out-lot 72, and the defendant contended that the notice given to J. H. Burtis must have been given to the resident, Jacob H. Burtis, who had no title, and not to Joseph F. Burtis, who had title, and that the damages paid into court were paid to Jacob H. Burtis, if to anybody. The record shows that the J. H. Burtis to whom notice was given was a non-resident and the owner of the lot, and he was therefore not the resident Jacob H. Burtis, who had no interest in the property. So far as the error in the middle initial is concerned, the law is that a middle letter is no part of the name of an individual, and if it is omitted, wrongly inserted or erroneous it makes no difference. The common law recognizes but one christian name, and a middle initial may be dropped or resumed or changed at pleasure. Its presence or absence or difference affects nothing. (*Gross* v. *Village of Grossdale,* 177 Ill. 248; *Claflin* v. *City of Chicago,* 178 id. 549.) While a letter of the alphabet does not constitute a name, yet the initial letter of the christian name is so commonly used that it is to be regarded, not as the name of some other person, but as an abbreviation of the christian name of the person intended. (*Lee* v. *Mendel,* 40 Ill. 359.) Under these rules the notice in this case is to be taken the same as if given to J. Burtis, which is to be regarded as an abbreviation of a christian name beginning with the letter "J.," and it is no more an abbreviation of Jacob than of

Joseph. The evidence excludes any inference that it was Jacob, who was a resident and not an owner, and the plat showed the owner to be J. F. Burtis, from which it appears that the middle letter "H" was a mere error. If that were not so, the proceeding long since became binding upon Joseph F. Burtis and his grantee, Valentine, Belgen & Co., and those in privity with them. The plaintiff took possession of its right of way by virtue of the proceeding, improved it for its railroad purposes and has occupied it for more than fifty years. The jurisdiction of the court over Joseph F. Burtis in the condemnation proceeding was never questioned by him or any one in privity with him, and is not now questioned by any one connected with his title or authorized to dispute the validity of the orders. The titles resting upon judicial proceedings would have but an insecure foundation if they could be overturned, after the lapse of fifty-five years, by proof that there was some person, having no title or interest in the subject matter of the litigation, with a name having the same initial letters as the name appearing in the record.

The evidence for the plaintiff was sufficient to establish its title to an easement two hundred feet in width over and across out-lot 72, and the remaining question is whether that title was lost by adverse possession of the defendant for twenty years as to the west fifty feet.

The defense under the second plea was the twenty years Statute of Limitations, and the evidence neither covered the requisite period of time nor proved the hostile and adverse possession required by law. The premises were never enclosed until about one year before the trial, when the defendant built a fence fifty feet from the track, enclosing the disputed strip, and the plaintiff tore it down. The defendant built it again and plaintiff again tore it down. There was no fence on that side nearer than one hundred feet to the center of the track until the fence referred to was built. The premises were a part of the plaintiff's right of way at

the station of Hudson and within that part of the village laid out in lots and blocks. There was nothing whatever on the land until 1875, except a shoe-shop built by Isaac Dement about the center of the lot, eighty-eight feet from the track, which was standing in 1866. Nothing further appears about that shop, except that in 1872 it was empty and the defendant removed it. There was a store building near the south-west corner of the lot about the same time, which was ninety-one feet from the track. There is no evidence as to who built it or occupied it, or when or how long, but it was also removed by the defendant in 1872. In 1875 the defendant commenced to handle and sell lumber at the station, and he testified that he piled some of it on this ground without any objection from the plaintiff, and sold it from time to time and replaced it with other lumber. His lumber yard appears to have been west of the strip, but the lumber which came by rail on plaintiff's cars was unloaded and more or less of it was on this strip. The plaintiff permitted anyone doing business with it to put material on the right of way whenever he pleased and remove it when he got ready, and this was testified to by the defendant's witness. Such possession as the defendant had was of the character commonly permitted by a railroad company at a station and which the evidence shows was permitted by the plaintiff at this station, and he never notified the company in any way during the time he was running the lumber yard that he claimed the land. We find nothing in the record to indicate that during any of that time he made such a claim or that the plaintiff had any notice that he was asserting any right to the land. That possession only continued from 1875 to 1890, which was less than twenty years, and after that the defendant did nothing which could possibly amount to an adverse possession. He testified that he sometimes tied his horse on the strip, and there was evidence that he cut some grass on it; but cutting hay, tying a horse on the premises, and similar acts, do not constitute

adverse possession of unenclosed land.   (*Travers* v. *Mc-Elvain*, 181 Ill. 382.)   The evidence shows that if there was grass on the right of way, any one who wanted it would cut it.   Franklin street south of the out-lot crossed over the railroad until about fifteen years ago, when a sub-way was built and it went under the track.   When the street crossed over the track the defendant built a fence along the south side of the out-lot to within about eighty feet of the railroad to keep people from driving over the railroad, but after the sub-way was built people could not drive on the out-lot from Franklin street and the fence was connected with the sub-way.   The fence did not amount to an enclosure of the land, (*Ely* v. *Brown*, 183 Ill. 575,) and it is doubtful from the different statements of the defendant whether it came nearer than one hundred feet from the center of the track.   The defendant did not succeed in any way to the rights of any party who had the shoe-shop or the other building on the premises.   The judgment cannot be sustained on the ground that the defendant had been in possession of the premises for twenty years.

Quite a number of deeds were received in evidence by the court on the trial subject to objections, and it does not appear that the court found any of them sufficient to convey title to the defendant.   Counsel discuss the question of color of title under these deeds and payment of taxes, but there was no plea setting up title under the seven years Statute of Limitations, perhaps because the right of way of the plaintiff is not taxable by the local authorities to whom taxes were paid.   If the question had been at issue and such a defense could have been made, the evidence was insufficient to fulfill the requirements of the Statute of Limitations.   Neither did the deeds show any title in defendant. They were clearly insufficient to convey title.

It is urged that one chain of conveyance originated in a sale for taxes on June 14, 1852, before the plaintiff acquired its title; but the evidence is insufficient to show the

tax deed conveyed any title, and the deed from the grantee in that tax deed was only to that part of out-lot 72 lying west of the railroad. Subsequent conveyances, also, were of that part of the out-lot lying west of the boundaries of the Illinois Central railroad, which the court properly construed to mean that part outside and west of the right of way of the plaintiff.

The decision of the court, and the judgment, as shown by the propositions of law held and refused, rested solely upon the finding that the condemnation proceeding was null and void and that plaintiff showed no title to the strip. As we do not concur in that view the judgment must be reversed.

The judgment of the circuit court is reversed and the cause remanded.                    *Reversed and remanded.*