EMELIA PETTA, Appellant, *vs.* JOHN P. HOST *et al.,*
Appellees.

*Opinion filed November 18, 1953.*

294

JOSEPH H. HORWICH, of Chicago, for appellant.

CHARLES F. GRIMES, and EDWARD R. CULLEN, both of Chicago, for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

Emelia Petta, the appellant, filed a complaint in the circuit court of Cook County wherein she prayed for the partition of five parcels of real estate in which she claims an interest. After the issues had been settled by the pleadings, the cause was heard before a master in chancery and, acting upon the latter's report and recommendations, the chancellor entered a decree which, among other things, dismissed the complaint for want of equity as to two of the parcels, described in the record as the Vrshek and Host tracts. This direct appeal is taken from that portion of the decree.

The unique factual situation presented by the record began on July 9, 1919, at Philadelphia, Pennsylvania, when appellant and Tony Petta were lawfully married. Some seven or eight months later, Tony deserted appellant and, without her knowledge, took up residence in Blue Island, Cook County, Illinois. Shortly after his disappearance, a

daughter was born to appellant as the fruit of such marriage. Appellant's efforts to locate her husband immediately after his departure were unavailing and she and her daughter continued on in life without ever hearing from Tony in his lifetime. Tony, in the meantime, after living in Blue Island for several years, married one Anna Boncoura Petta, apparently without benefit of a divorce from appellant. Three children were born to this union. When Anna died, Tony, still undivorced from appellant as far as the record shows, entered into a third marriage with Francesca Petta and she bore him one child. All the children and the wives, save Anna, survived Tony's death on July 25, 1945, an event which occurred with appellant still not knowing of her husband's whereabouts.

Tony Petta died testate, his will was admitted to probate and his brother, Donato Petta, was appointed executor as the will requested. The will contained no mention of appellant or her child, and it appears that neither was given notice of the probate proceedings nor was their existence revealed to the court in the proof of heirship. After enjoying a normal course of administration, the estate was closed on July 16, 1946. Almost three years later, in May, 1949, appellant first became informed of her husband's death, of his two subsequent marriages and of the probate of his will. Acting upon such newly acquired knowledge, appellant, on August 9, 1949, filed a petition in the probate court of Cook County seeking to vacate the order closing the estate and the order finding heirship. Consequently, on November 2, 1949, an order was entered opening the estate and modifying the original order of heirship with a finding that appellant, Emelia Petta, was the lawful widow of Tony Petta and that the daughter born of their union was an  heir together with the four children born of the second and third marriages. On December 27, 1949, appellant filed a  renunciation of Tony's will and claimed all common-law and statutory rights accruing to her as his widow. This

proceeding to partition five parcels of real estate of which Tony had become seized in his lifetime, and while lawfully married to appellant, was commenced a few months later with appellant alleging that, as the widow of Tony Petta, she had, at his death, become seized and possessed of an undivided one-third interest in fee in each of the five parcels, as a tenant in common with certain named defendants. On this appeal we are concerned with only two of said parcels, and, as to them, appellant's complaint was dismissed for want of equity.

The first parcel involved here is the Vrshek parcel which was acquired by Tony in 1936 by a master's deed. In 1942, Tony and Francesca, the third wife, conveyed the premises to Paul Vrshek, a bachelor, who, prior to the time this partition proceeding was commenced, had married and caused title to be placed in himself and his wife as joint tenants. It is unquestioned that Vrshek was a *bona fide* purchaser for value who had no notice or knowledge of the appellant's rights, the facts showing that the conveyance to him was executed three years before Tony Petta died and eight years before appellant renounced her husband's will and sued for partition.

The second tract of land involved in this appeal is known as the Host parcel and the facts relating to it show that Tony Petta acquired title in 1933 and retained it until his death. After his estate had been closed, this parcel was, on November 21, 1947, conveyed to parties named Drain and Proctor by a guardian's deed executed by Donato Petta as guardian for three of the deceased's minor children, and by a warranty deed executed by Francesca Petta, the presumed widow, and by Angelina Petta, the only child of the second and third marriages who had then attained legal age. The premises sold for $7300 and, by the order entered in the guardianship estates authorizing the conveyance, the guardian was directed to pay the expenses of the sale, to pay Francesca the value of a life estate, to

pay one fourth of the balance to the adult child, and to hold the remaining three fourths for the three minor children. In February, 1948, Drain and Proctor conveyed the parcel to a bank as trustee, and later, on October 27, 1949, the trustee conveyed it to John P. Host who presently has the record title to the premises. On December 20, 1949, appellant, having been successful in reopening Tony Petta's estate and in having herself declared his lawful widow, filed objections to the final account of the guardian, claiming $2,433.33 "as and for her dower interest in the premises" and praying that the guardian pay such amount to her "as and for her pro rata share of the proceeds of said sale." The court disallowed appellant's claim and approved the final account. No appeal was taken from that order. Instead, appellant having failed in her efforts to reach the proceeds of sale, commenced this proceeding asserting an interest in the property.

Appellant contends in this proceeding that as the lawful widow of Tony Petta, she is seized and possessed of an undivided one-third interest in fee, as tenant in common with all other persons in interest, in the Vrshek and Host parcels and is thus entitled to partition. The Vrsheks and Host, who are appellees along with several financial institutions, defend that they are *bona fide* purchasers for value who purchased without notice or knowledge of appellant's interest and that their interests prevail over those of appellant; that appellant is barred of claiming either an interest in fee, or dower, for failure to renounce her spouse's will within ten months after it was admitted to probate as required by law, (See: Ill. Rev. Stat. 1945, chap. 3, pars, 169 and 172,) and that she is further barred of any claim to dower for failure to perfect it in the required manner. (See: Ill. Rev. Stat. 1945, chap. 3, par. 171.) Further, as to the Host parcel, it is contended that appellant was guilty of *laches* and that her assertion of dower against the moneys held in the minors' guardianship estate was an

election of remedies, and an adjudication under first one taken, which bars a subsequent attempt to proceed against the premises.

Before proceeding to a discussion of the issues raised by these contentions, we note that appellees have presented an initial argument that appellant had, in view of the strong presumption favoring the validity of a second marriage, the burden of proving there had been no divorce and that she failed to sustain such burden. We find, however, that appellees have assigned no cross error in this court to the express finding of the decree that Emelia and Tony had not been divorced. The issue raised, therefore, is not properly before us and in our consideration of this appeal we must proceed on the basis that appellant is the lawful surviving spouse of the deceased.

Looking to the Vrshek parcel first, the arguments advanced compel us to first clarify appellant's mistaken belief that she is, by virtue of the Probate Act, entitled to a one-third interest in its fee. It will be recalled that Vrshek acquired title to the premises by a deed from Tony and Francesca Petta, in which appellant did not join, executed some three years prior to Tony's death. Section 18 of the Probate Act (Ill. Rev. Stat. 1945, chap. 3, par. 170,) provides that a widow is entitled to dower in all of the real estate of which her husband was seized of an estate of inheritance at any time during their marriage. In construing this provision, which has survived many changes in the statutory regulations pertaining to dower, this court has consistently held that a husband may validly dispose of his fee in an estate without the consent of his wife, but he does so subject to, and cannot thereby defeat, the wife's inchoate right of dower. (*Weyer* v. *Barwell,* 327 Ill. 214; *Shoup* v. *Shoup,* 319 Ill. 179; *Deke* v. *Huenkemeier,* 289 Ill. 148.) Applying this principle to the facts of this case, it emerges that the only interest remaining in appellant after the conveyance to Vrshek, was an inchoate right of

dower. In claiming that she is now entitled to a one-third of the fee, appellant points to section 16 of the Probate Act (Ill. Rev. Stat. 1945, chap. 3, par. 168,) which makes this provision: "When a will is renounced by the testator's surviving spouse in the manner provided in Section 17 hereof, whether or not the will contains any provision for the benefit of the surviving spouse, the surviving spouse is entitled to the following share of the testator's estate after payment of all just claims: (a) if the testator leaves a descendant, one-third of the personal estate and one-third of each parcel of real estate of which the testator died seized and in which the surviving spouse does not perfect his right to dower in the manner provided in Section 19 hereof * * *." It is contended that this language must be read together with section 18 referred to above, and the effect of the two sections is that the wife, if she does not elect to take dower after renouncing the will, receives a one-third interest both in lands of which the husband died seized and of which he was seized at any time during coverture. In other words, appellant contends that her failure to perfect her inchoate right of dower ripens her  interest into a share of the fee, even as to lands of which her husband did not die seized.

The contention that the section conferring an inchoate right of dower must be read together with the provisions which permit the wife to take a part of the fee as heir, is a historic one that has been before this court under varying circumstances in such cases as *Brown* v. *Pitney,* 39 Ill. 468, *Sutherland* v. *Sutherland,* 69 Ill. 481, *Blankenship* v. *Hall,* 233 Ill. 116, and *Weyer* v. *Barwell,* 327 Ill. 214, where the antecedents of the present Probate Act were under consideration. The rationale of these cases, and particularly that of the *Blankenship case,* where the facts were greatly similar to those of the present case, is that the right of dower exists independently of the rights of the heir. The cited cases hold, first, that the right conferred by the stat-

utory provision giving a wife an inchoate right of dower in all of the lands of which the husband was seized during coverture is manifestly different from the right conferred upon the wife to take as heir a fee interest in the lands of which he died seized and, second, that the two provisions are not to be construed as showing a legislative intent to give a surviving spouse a right to a fee interest in the real estate of which the deceased spouse did not die seized. No other result may obtain under the present Probate Act, for both section 11, (Ill. Rev. Stat. 1945, chap. 3, par. 162,) which relates to the rules of descent and distribution of intestate real estate, and section 16, quoted above, which fixes the share of a surviving spouse as heir upon renunciation of a will, still contain the limitation that a fee can be substituted for dower only in the estates of which the deceased spouse died seized. That this was the intention of the legislature when the present Probate Act was adopted is further manifest by section 25 thereof, which provides: "If real estate is conveyed or mortgaged by one spouse during his lifetime without release of dower by the other spouse, the latter is barred of dower therein as against the grantee or mortgagee or those claiming under them unless the surviving spouse perfects his right to dower therein in the manner provided in Section 19 hereof." Ill. Rev. Stat. 1945, chap. 3, par. 176.

The facts clearly show that Tony Petta did not die seized of the Vrshek parcel and, from the authorities cited,  it is apparent that the only interest appellant could claim after his death was a right of dower. Aside from the consideration that the premises were sold to a *bona fide* purchaser, a point later to be discussed, dower must be denied appellant in this proceeding for her failure to affirmatively perfect it as provided in section 19 of the Probate Act.

The factual situation is not the same with regard to the Host parcel, for the record shows that Tony Petta was seized of a fee interest therein at his death, thus presenting

a valid basis upon which appellant could assert a claim to one third of the fee. In opposition to her claim, appellees contend that she is barred from claiming either dower or a fee interest for her failure to renounce Tony's will within ten months after its admission to probate, a condition imposed by section 17 of the Probate Act for the valid and effective renunciation of a will. (Ill. Rev. Stat. 1945, chap. 3, par. 169.) Appellant takes the position that the ten-month period was tolled as to her until such time as she became aware of her husband's death and of the probate of his will, and that her renunciation within ten months of the time she acquired such knowledge is sufficient compliance with the statute. To counter this argument, appellees insist that the requirements of the statute are absolute and, in the interest of settling real-estate titles derived through probate proceedings, admit of no exceptions, however meritorious the claim, or harsh the result.

Although we have found no decisions presenting comparable factual and procedural situations, it is our opinion that appellees' contention overlooks that the probate proceedings were a nullity as to appellant until such time as she brought herself within the jurisdiction of the probate court. Though once considered a proceeding *in rem,* it is now the well-established rule of this jurisdiction that the probate of a will is a proceeding *inter partes* and that all heirs, devisees and legatees are entitled to notice. (*McGee* v. *Vandeventer,* 326 Ill. 425; *Walker* v. *Cook,* 294 Ill. 294; *Floto* v. *Floto,* 213 Ill. 438; *Wright* v. *Simpson,* 200 Ill. 56.) In the cited cases, which were proceedings to set aside the probate of a will, it was held that an order of probate is binding on all parties in interest who are notified of the proceeding, but is a nullity, for want of jurisdiction over the person, as to parties in interest who are not notified.

The facts of this case clearly show that appellant did not receive notice of the probate of her spouse's will and,

while it is not an issue in this litigation, there is much in the record which suggests that her existence was known but purposely withheld from the probate court. Since the order of probate must be deemed a nullity as to appellant, it follows that the conditions imposed by the Probate Act for the renunciation of the will could not and did not become operative against appellant, in the absence of any showing that she had or should have had knowledge from which estoppel could arise, until such time as she became informed of the probate of the will. The facts show that appellant brought herself within the jurisdiction of the probate court, reopened the estate, obtained an amended order of heirship and renounced her husband's will, well within a ten-month period after she first acquired knowledge of the order admitting the will to probate. We hold, therefore, that appellant's renunciation was timely and proper and that she is not now barred from claiming a fee interest in the Host parcel. Here, again, however, there remains the question of whether her interest may prevail over one presently holding the title through mesne conveyance from a *bona fide* purchaser for value who took without notice or knowledge of appellant's interest.

In the majority of jurisdictions where the issue has arisen, we find the established doctrine to be that the title of a purchaser in good faith, for valuable consideration, from beneficiaries under a will, after its probate, is not affected by the subsequent revocation of probate, it being held that they occupy the position of *bona fide* purchasers for value and are entitled to protection as such. (See: 26 A.L.R. 270.) The same rule has been applied in this jurisdiction to protect *bona fide* purchasers from the effects of subsequently discovered wills which divested their vendors of their supposed titles. (*Knobloch* v. *Mueller,* 123 Ill. 554; *Cassem* v. *Prindle,* 258 Ill. 11; *Eckland* v. *Jankowski,* 407 Ill. 263.) Language contained in *Walker* v. *Cook,* 294 Ill. 294, where the probate of a will was de-

clared null and void as to one heir who did not receive notice of the proceding, also strongly indicates that while an heir may prevail as between the parties, a *bona fide* purchaser, who purchased before the revocation, would have been protected had such been the case. While we are not dealing with a situation where the probate of a will has been revoked, or with a subsequently discovered will, it is apparent from the facts of this case that appellees have an equal equity with appellant, are equally entitled to the protection of the court, and that the equitable doctrine which protects *bona fide* purchasers should apply.

As already seen, Vrshek and Host's predecessors in title purchased in complete good faith and for valuable consideration. In *Eckland v. Jankowski,* 407 Ill. 263, it is stated that a purchaser of land is charged with constructive notice not only of whatever is shown in the office of the recorder of deeds, but in addition, with matters affecting the title of the land which appear in the records of. the circuit, probate and county courts in the county where the land is situated. It is the purchaser's duty to examine such records and he is chargeable with notice of whatever is shown by the record. In this case, an examination of the records pertaining to the Vrshek parcel disclosed that Tony Petta owned the fee title and Tony's deed to the purchaser represented that Francesca Petta was his lawful wife. As to the Host parcel, when it was sold to Proctor and Drain, an examination of the public records disclosed the death of. Tony Petta testate, owning fee title, and the apparent due probate of his last will and testament with a finding of heirship, including the rights of an alleged surviving widow. There was nothing contained in these records which would give an innocent purchaser for value notice of the existence of any other heir or surviving widow with prior rights, or that anyone other than those designated as devisees in the will, or as heirs in the finding of heirship, had any interest in the premises. Thus, all the elements which go

to constitute a *bona fide* purchaser are here present, namely, valuable consideration paid, absence of notice and presence of good faith.

Still another rule which protects appellees in this cause is that which ordains that purchasers may, in security, rely upon public records of conveyances and instruments affecting title to real estate, unless they have notice, or are chargeable in some way with notice, of a claim, estate or interest inconsistent therewith. (*Lennartz* v. *Quilty,* 191 Ill. 174; *Vombrack* v. *Wavra,* 331 Ill. 508; *Bullard* v. *Turner,* 357 Ill. 279.) If such were not the case, our laws requiring the registration of deeds would be useless if not worse, because a purchaser, even after the most thorough examination of the public records, and finding a succession of conveyances, all in legal form and perfect order, might still be evicted upon proof of a secret trust, or a fraud, on the part of some former owner.

When the facts of this case are appraised in the light of the principles discussed, it. is our conclusion that the titles of appellees, who stand in the position of *bona fide* purchasers, must, in equity, be protected from the claims of appellant. In *Knobloch* v. *Mueller,* 123 Ill. 554, it is said that the defense of a *bona fide* purchaser had its rise in equity upon the doctrine that a court of equity acts upon the conscience of him against whom relief is sought, and if he has done no wrong, or it would be inequitable or unconscientious to grant relief, courts will refuse to exercise their jurisdiction. We are not unaware that appellant, too, is possessed of equities and is guilty of no wrong-doing in this cause and, while it may seem that our choice between the parties is harsh and untoward, the balance must be swung to appellees because of the far-reaching public interests involved, namely, the merchantability of titles passing through probate proceedings and the stability of public records which reflect the title to real property.

Claim is made by appellant that because a guardian's sale was involved in the original sale of the Host parcel to Proctor and Drain, the doctrine of *caveat emptor* and the fact that a guardian's deed is a quitclaim deed, preclude Host from being a *bona fide* purchaser. A complete rejection of this argument is found in 39 C.J.S. Guardian and Ward, sec. 139, where the general rule is summarized as follows: "A purchaser at a guardian's sale, under an order of court, takes a good title if the court had jurisdiction, the proceedings are regular on their face, and he purchases in good faith without knowledge of any defect or irregularity, unless it is such that renders the sale void. The doctrine of *caveat emptor* applies to such a purchaser, as well as to a subsequent purchaser from him, but the latter, if *bona fide,* is not affected by matters which make the original sale voidable only." In *Penn* v. *Heisey,* 19 Ill. 295, this rule was extended to protect the title of a subsequent purchaser, even though the original sale was void, on the principle of equitable estoppel. Under either principle, therefore, we must hold that the doctrine of *caveat emptor* does not operate to prevent Host from raising the defense of *bona fide* purchaser. The facts here show that the sale by the guardian of the interest of three of the minor heirs was not void, that it was consummated in good faith and without knowledge of any claim or interest of appellant. Where such is the case, "a bona fide purchaser from the original purchaser will be protected in his title, and is not affected by matters which do not appear on the record or which make the title of the original purchaser voidable." 39 C.J.S. 139.

The decree of the circuit court dismissing appellant's complaint, as to appellees, for want of equity, was proper and is affirmed.

*Decree affirmed.*