SLATIN'S PROPERTIES, INC., Plaintiff-Appellant, *v.* ROSE HASSLER *et al.,* Defendants—(FRANK W. TOMENGA *et al.,* Defendants-Counterclaimants, Appellees.)

(No. 70-197;

Second District—July 15, 1971.

Lyle H. Rossiter, of Glen Ellyn, for appellant.

Paul S. Schmid, of Wheaton, for appellees.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Judgment was entered in favor of defendants Frank W. Tomenga, Nancy Tomenga, his wife, and Frances R. Arne, on their respective counterclaims to quiet title to certain vacant city lots. The court denied relief to the plaintiff corporation which had sought the same remedy. The case was heard upon a stipulation of facts.

Plaintiff appeals, claiming paramount title pursuant to the provisions of the Conveyances Act (Ill. Rev. Stat. 1965, ch. 30, par. 29), as the grantee of a deed from a common grantor which was first recorded. Defendants rely upon the provisions of Section 7 of the Limitations Act (Ill. Rev. Stat. 1967, ch. 83, par. 7) claiming color of title, payment of taxes for more than seven years with alleged acts of possession.

The parties stipulated in substance:

*Slatin's Claim of Title.*

J. Duncan Barry and wife (the common grantor) conveyed Lot 24, Block 6 in Glen Park Subdivision—together with many other lots in the same subdivision—to the Chicago Title & Trust Co., as Trustee under Trust No. 20602, by deed dated and recorded April 11, 1928. Lot 11, Block 6 in Glen Park Subdivision was conveyed, together with numerous other lots by the same grantor to the same grantee by deed dated April 24, 1928, and recorded April 26, 1928. In 1948 the trustee conveyed to Bert E. Rathje and wife under a deed which included the subject property and numerous other lots. The Rathjes conveyed the lots, among many others, to Du Page Trust Co., Trust No. 428, by quit claim deed dated May 18, 1956, and recorded June 26, 1956. Trust No. 428 conveyed to W. B. Carroll by trustee's deed dated May 18, 1956, and recorded December 7, 1956. Carroll conveyed the subject property, among many other lots, to plaintiff, Slatin's Properties, Inc., by a quit claim deed dated December 6, 1956, and recorded December 11, 1956. On July 19, 1965, plaintiff enclosed the lots in question by erecting steel posts and connecting three wire strands, and it had brokers signs erected on the properties.

*The Tomenga Claim.*

Prior to the deed from the Barrys to Chicago Title & Trust Company, as Trustee No. 20602—under which the Slatin's claim—the Barrys had conveyed the same Lot 11, Block 6 to Anton Vanha by warranty deed dated

October 24, 1927. This deed, however, was not recorded until August 28, 1929, which was after the deeds to Chicago Title & Trust Company, No. 20602 had been recorded. Thereafter, Vanha conveyed to Marie Tomenga by deed dated May 11, 1931, and recorded May 18, 1931; Marie Tomenga and her husband reconveyed to Anton Vanha by deed dated February 24, 1942, recorded May 23, 1942; and Chicago Title & Trust Company, as Executor of the Estate of Anton Vanha, Deceased, conveyed to Frank W. Tomenga by deed dated June 18, 1952 and recorded June 28, 1952. Anton Vanha paid the annual real estate taxes for the years 1928 through 1943. Frank Tomenga and his predecessors paid the taxes through 1944-1967. Anton Vanha paid installments 1-10 of Glen Ellyn Special Assessment No. 180 (for sewer lines and sewage disposal plant in the village); Frank Tomenga paid installments 1-3 of Glen Ellyn Special Assessment No. 204 (for sidewalks) in 1966, 1967 and 1968; and also paid for cutting weeds on the property in 1967 and in 1968 upon the demand of the Village.

*The Arne Claim.*

Defendant Arne's claim to Lot 24, Block 6 is based on a contract entered into on August 30, 1927, with "Du Page Building and Development Organization". This contract was entered into prior to the deeds from J. Duncan Barry to the Chicago Title & Trust Company as Trust No. 20602 and the stipulation of facts does not contain any evidence of any contractual, fiduciary, or other relationship between the Du Page Building and Development Organization and Barry or any of his successors in title; nor is there evidence of the identity of the beneficiaries under the Chicago Title & Trust Company, Trust No. 20602, or of any connection between such beneficiaries and the Du Page Building and Development Organization. The contract in question was in the amount of $979, payable $79 down with the balance payable in monthly installments of $15 with six (6) per cent interest. The stipulation included a copy of the contract and receipts found totaling $220 with the last item being December 13, 1930. It was stipulated that the taxes were paid in the name of one Wilson for 1929 and 1932, and in the name of Arne for 1933-1967. Arne also paid installments 1-10 of Glen Ellyn Special Assessment No. 80 and 1-4 of Glen Ellyn Special Assessment No. 204; and amounts for cutting weeds in 1949, 1958, 1959, 1961, first paid to the township and then to the village.

It was further stipulated that plaintiff and its predecessors in title had never paid taxes or other charges levied against either of the properties for the more than 40 year period in question.

■■ Under the stipulated facts, the plaintiff has shown continuous record title to both lots. Where there are two grantees under separate

deeds from the same grantor, neither of whom is shown to have any knowledge, or notice, of the other's deed, the first deed to be recorded is effective, and the other is void under Section 30 of the Conveyances Act, *supra*, (Ill. Rev. Stat. 1965, ch. 30, par. 29). *Vombrack v. Wavra* (1928), 331 Ill. 508, 511, 513; *Petta v. Host* (1953), 1 Ill.2d 293, 304.

■■ There is no evidence in the case that the grantees in the chain of title from the Chicago Title & Trust Company to the plaintiff had any knowledge of the chain of title from Vanha to Tomenga, or any knowledge of the installment contract between the Du Page Building and Development Organization and Arne. But bad faith, knowledge of equities of third parties and want of consideration are affirmative defenses and the burden of proof as to these matters is on the party asserting such fact, whereas the grantee in the deed is presumed to be a *bona fide* purchaser. *Lowden v. Wilson* (1908), 233 Ill. 340, 346.

The trial court found, pursuant to ch. 83, par. 7, *supra*, that defendants became the owners of the lots with good title by virtue of color of title plus payment of taxes, special assessments, and weed cutting levies. The real issue before us is posed by plaintiff's argument that its paramount title and possession has not been divested, because defendants did not take possession of the lots.

Section 7 of the Limitations Act has been consistently construed "to mean that one claiming the benefit of the statute must prove not only that he holds vacant and unimproved land under color of title but also that he has paid taxes thereon for seven successive years *and has since taken possession thereof* * * *"*. (Emphasis added) *Failoni v. Chi. & North Western Ry. Co.* (1964), 30 Ill.2d 258, 261. See also, *McCauley v. Mahon* (1898), 174 Ill. 384, 387-289; *Woods v. Glos* (1913), 257 Ill. 125, 126, 127; *Robertson v. Bachmann* (1933), 352 Ill. 291, 296; *Chi. Title and Trust Co. v. Drobnick* (1960), 20 Ill.2d 374, 379.[1]

■■ The "possession" required depends on the nature and locality of the property but must be such as will apprise the community in the vicinity of the land that it is in the exclusive use and enjoyment of the Section 7 claimant. (*Towle v. Quante* (1910), 246 Ill. 568, 574; *Robertson v. Bachmann*, 352 Ill. 291, *supra*, at page 296.) Such possession can-

---

[1] Defendants argue that there is a serious question whether possession is required since Section 7 does not expressly refer to possession. The contention is based on the special concurring opinion in *Pyle v. Ferrell* (1958), 12 Ill.2d 547, 556—559 that the requirement of possession to complete a Section 7 title arose in ejectment actions and by the following of an erroneous interpretation of the early case of *Newland v. Marsh* (1857), 19 Ill. 376. It was contended that possession should not be required in equitable actions based on color of title and 7 years payment of taxes. We are bound, however, by the rule which has been consistently followed in the Illinois cases.

not be inferred but must be clearly proven. (*Travers v. McElvain* (1899), 181 Ill. 382, 387; *Chi. Title and Trust Co. v. Drobnick, supra*, at page 379.) Payments of taxes and special assessments are not such acts of possession as are required under the statute. (*Woods v. Glos*, 257 Ill. 125, 126, *supra*.) Payment of fees for weed removal by township or village is likewise not an act of an open and visible character which could be said to apprise the community in the vicinity of the lots that the property was owned by the defendants or that they were claiming possessory rights. (See *C. & N. W. Ry. Co. v. Kennedy* (1931), 344 Ill. 309, 318 (holding that repeated mowing of weeds by the claimant did not constitute acts sufficient in themselves to uphold a claim of actual and exclusive possession).) The fencing of the land by the plaintiff, however, is a sufficient act of possession. *Stalford v. Goldring* (1902), 197 Ill. 156, 166; *Chi. Title and Trust Co. v. Drobnick*, 20 Ill.2d 374, *supra*, at page 379.

Defendants have principally argued that the acts of possession shown were sufficient in view of the nature of the vacant and unimproved city land. We have rejected that argument inasmuch as no authority has been cited, nor have we found any case in favor of the claimant under Sec. 7 in which the only acts of possession shown were payments for special assessment and weed removal, both levied by municipalities and involving no acts on the property by the defendants or their predecessors.

Alternatively, defendants have urged that we sustain the judgment below on equitable considerations, suggesting the doctrine of "clean hands", "estoppel" or "laches". Essentially defendants have argued that it is against public policy to allow owners of real estate to stand by for more than 40 years while others pay taxes, special assessments and weed cutting statements. While these equitable defenses were not formally or specifically argued below, it is apparent that the trial court was basically concerned with the general equities and made no specific finding that the stipulated acts constituted possession of the properties. We are therefore not precluded from considering these equitable issues although they were not specifically pleaded. See *In re Estate of Brown* (1970), 264 N.E.2d 287, 294.

■■■ There appears to be no authority, however, which would permit the transfer of title to vacant land from an owner for his failure to pay bills assessed by governmental bodies, except when the provisions of ch. 83, par. 7 are followed. The Revenue Act (Ill. Rev. Stat. 1965, ch. 120, par. 697 *et seq*) nowhere provides for transfer from a non-paying owner to a party who pays taxes except through sale for tax delinquencies, a procedure not here involved. An owner does not lose his property

by mere non-use or abandonment. (See *Pyle v. Ferrell* (1958), 12 Ill.2d 547, 550; *Uphoff v. Trustees of Tufts College* (1933), 351 Ill. 146, 155; *Gage v. Hampton* (1889), 127 Ill. 87, 94.) An owner may vacate his property or occupy it as he wishes, but he takes a risk that in not paying his taxes or other bills which could be liens on the property, he may lose the property to a claimant or lienholder who perfects his rights in a way provided by law. He does not lose it because of a public policy to penalize a non-taxpaying owner in an action brought in equity.

■■ Granted, there may be circumstances wherein one who seeks to establish his claim to land may be refused relief in equity under the doctrine of laches because, prior to his assertion of his claim, there has been a significant passage of time coupled with such change in the condition of the property or the relationship of the parties as makes it inequitable to grant relief. Thus, in *Pyle v. Ferrell*, 12 Ill.2d 547, *supra*, the owner of land was barred by laches from recovery of mineral rights in his land as against the holder of a tax title thereto. The court in *Pyle* did not conclude that the payment of taxes for some 20 years with record transfers of the title to the mineral leasehold and leases of the oil and gas rights amounted to possession under *Section 7*. Pyle, however, was seeking to remove a tax deed, which appeared to have been regularly issued, as a cloud on title, claiming after the long passage of time that it was void in that he had not received notice of the proceedings. The majority found that Pyle was guilty of laches in not pursuing his claim for the long period of time when the adverse tax deed claimant, who was known or should have been known from public records, had paid taxes and incurred the risk and obligations attendant upon entering into oil and gas leases. The owner's neglect was held to preclude him from seeking equitable relief to remove the tax deed as a cloud on title under the particular circumstances of the case. Among the controlling circumstances, the court emphasized that a mineral estate was involved, necessitating a greater degree of diligence and promptness than would otherwise be required; and considered the fact that Ferrell was now deceased so that his heirs would have been handicapped in defending Pyle's claim of the invalidity of the tax deed.

■■ We think that the doctrine of *Pyle* would not be applicable to defeat a paramount title as against a void deed from a common grantor in the absence of either acts of possession or any public proceedings which would alert the title holder to the existence of an adverse claim. In *Pyle*, there was evidence of a proceeding under which the owner had been notified of the sale of the estate for delinquent taxes—here there is no alerting of the owner. The failure to pay taxes without the expected consequences of a sale of the property for delinquency does not in our

view change the situation. The failure to pay taxes merely poses a risk to an owner that he may lose his property if there is a claimant who can comply with the Limitations Act. In the event of a tax purchase the owner may rely upon the provisions of the Revenue Act and redeem or not redeem as he pleases. But the circumstances here do not permit the transfer of plaintiff's title to defendants under the laches doctrine nor, in our opinion, is the doctrine of laches applicable to prevent the confirming of title in plaintiffs.

■■ The judgment below is reversed but as a condition to plaintiff being relieved from defendants' claim, it must do equity. Defendants are entitled to be repaid for all taxes, special assessments and weed-cutting payments paid either by themselves or their predecessors in title with statutory interest[2] from the date of the respective payments. Accord, *Smith v. Prall* (1890), 133 Ill. 308, 314; and *Stallings v. Glos* (1915), 271 Ill. 201, 202.

The cause is remanded to the trial court to determine the amounts due defendants in accordance with this opinion and with directions to the trial court to enter judgment in favor of plaintiff on its suit to quiet title when such repayment has been made.

Reversed and remanded with directions.

T. MORAN, P. J., and ABRAHAMSON, J., concur.

---

[2] See Ill. Rev. Stat. 1969, ch. 74, par. 2; and see *Continental Nat. Bank & Trust Co. v. Olney Nat. Bank* (1929), 33 F.2d 437, 440.