2015 IL App (2d) 140639
No. 2-14-0639
Opinion filed June 30, 2015
Modified upon denial of rehearing October 15, 2015

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| CONCORD AIR, INC., | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 13-CH-2931 |
| | ) | |
| MARCIN MALARZ, CHICAGO TITLE | ) | |
| LAND TRUST COMPANY, as Trustee | ) | |
| Under a Trust Agreement Dated May 8, 2012, | ) | |
| Known as Trust Number 80023599443, | ) | |
| UNKNOWN OWNERS, and | ) | |
| NONRECORD CLAIMANTS, | ) | Honorable |
| | ) | Mitchell L. Hoffman, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE BURKE delivered the judgment of the court, with opinion.
Justices Jorgensen and Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1    Harris Bank filed a foreclosure action (Harris foreclosure) as to the property at issue and named defendant Marcin Malarz[1] as mortgagor and plaintiff, Concord-Air, Inc., as a junior lienholder.  Affidavits in the record state that personal service on plaintiff was unsuccessful, and service ultimately was made by publication.  Plaintiff defaulted, and Harris Bank was the successful bidder at the judicial sale of the property, which was confirmed by the trial court.

_____
[1] Malarz is an appellee in this action but has not filed a brief.

Title was then conveyed to LaSalle Holdings via a sheriff's deed. In preparing to buy the property, defendant Chicago Title Land Trust Company (Chicago Title) obtained a title report showing that plaintiff's interest had been extinguished by the Harris foreclosure. Chicago Title purchased the property as trustee of the named land trust.

¶ 2    Upon learning of its default, plaintiff successfully moved to quash the service as defective. The trial court vacated the judgment against plaintiff only; and in turn, plaintiff initiated this action by filing a complaint for foreclosure and sale of the property.

¶ 3    The trial court dismissed the complaint under section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2012)), concluding that Chicago Title was a *bona fide* purchaser for value and that a ruling for plaintiff would be against public policy. Plaintiff appeals, arguing that the record in the Harris foreclosure gave Chicago Title inquiry notice that plaintiff's interest in the property had not been extinguished, because service by publication was improper. We conclude that the service affidavits on file in the Harris foreclosure gave Chicago Title inquiry notice; and therefore, the complaint may not be dismissed on the ground that Chicago Title was a *bona fide* purchaser. We reverse the dismissal and remand the cause for further proceedings.

¶ 4                                    I. BACKGROUND

¶ 5    On October 21, 2013, plaintiff filed a verified complaint to foreclose the mortgage on the property at 1313 East Westleigh Road in Lake Forest. The complaint named Malarz as mortgagor and Chicago Title as present owner of the property. Plaintiff alleged that the mortgage was executed on March 5, 2009, and recorded in Lake County on July 30, 2009. Plaintiff further alleged that the mortgage was in default because the property was transferred without plaintiff's prior written consent.

¶ 6    On February 14, 2014, Chicago Title filed a motion to dismiss the complaint under section 2-619(a)(9) of the Code, alleging as affirmative matter that Chicago Title was a *bona fide* purchaser for value.  To the motion, Chicago Title attached relevant documents to support its assertions.  Chicago Title alleged that BMO Harris Bank, as successor in interest to Harris Bank, previously pursued a foreclosure action as to the subject property, docketed in the circuit court of Lake County under No. 10-CH-636 (Harris foreclosure).  The Harris foreclosure pertained to a mortgage-securing note of $2.66 million, which was recorded in the office of the recorder of deeds in Lake County on July 19, 2007.

¶ 7    Harris Bank obtained a judgment of foreclosure and sale on December 6, 2011.  Thereafter, Harris Bank proceeded to a judicial sale in which the bank was the successful bidder.  On April 13, 2012, the trial court entered an order confirming the sale.  On April 19, 2012, the property was conveyed to LaSalle Holdings via a sheriff's deed, and the deed was recorded on June 18, 2012.

¶ 8    On or around May 7, 2012, Chicago Title obtained a title commitment in preparation of its purchase of the property from LaSalle Holdings.  Chicago Title's motion alleged that "[n]o outstanding title issues with the property were found" in the title commitment.  On May 21, 2012, LaSalle Holdings sold the property to Chicago Title for $1.15 million, and the special warranty deed conveying the property was recorded on June 18, 2012.

¶ 9    In the trial court, Chicago Title argued that the complaint must be dismissed because Chicago Title was a *bona fide* purchaser of the property for value.  Referring to the title commitment, issued by Chicago Title Insurance Company, Chicago Title asserted that it took title "without notice of any outstanding right or interest of [plaintiff]."  The title commitment "did not identify [plaintiff's] lien as creating a title issue or any exception of title that needed to

be remedied prior to closing," and in fact it "identifie[d] the Harris foreclosure action and identifie[d] no issue therein regarding any possible lien claim by [plaintiff]."

¶ 10    Plaintiff responded that the trial court in the Harris foreclosure lacked personal jurisdiction over plaintiff and that the jurisdictional defect was apparent from the record, defeating Chicago Title's claim that it was a *bona fide* purchaser. The record does not contain a transcript or a written order with an explanation of the court's basis for quashing service and vacating the judgment as to plaintiff in the Harris foreclosure. However, the motion to quash service alleged that plaintiff had never been served with a summons or complaint, plaintiff neither resided in another state nor left this state, plaintiff could have been found upon due inquiry, and plaintiff had not been concealed in this state.

¶ 11    To the motion, plaintiff attached the affidavit of Daniel Bachtold, Harris Bank's special process server, who stated that he was unsuccessful in attempting to serve plaintiff at 629 Pheasant Lane in Deerfield. The affidavit states:

> "We tried to obtain service on Dzoko Stojanov at this address, we ran it several times before actually catching anybody at this address, when we encountered a man who fits our description of Dzoko, he answered the door intoxicated and he indicated he does not feel like talking to anybody and just come back tomorrow, we tried to get him to be cooperative and he was playing games by opening and closing the garage door, he had company over and was trying to be funny, we left a copy of the documents behind, all skip and service efforts have been exhausted, request for service by Notice of Publication for [plaintiff] being difficult!"

The motion alleged that the property at the Pheasant Lane address is a residence and that the Secretary of State's website indicated that, when service was attempted, (1) plaintiff's registered

agent was Iljco Stojanov, not Dzoko Stojanov, (2) the address of plaintiff's registered agent was 7915 North Linder Avenue in Morton Grove, not 629 Pheasant Lane in Deerfield, and (3) plaintiff was dissolved as a corporation at the time of service by publication. The motion also alleged that the Linder Avenue address was listed as plaintiff's address on the mortgage. Plaintiff argued that, because it had been dissolved within five years of the attempted service, the registered agent and the registered office on record with the Secretary of State were an agent of the corporation upon whom claims could be served and service of process could be had. See 805 ILCS 5/5.05 (West 2012). Plaintiff contended that, according to the affidavit of nonservice, Bachtold did not attempt to serve process on Iljco Stojanov or anyone at the Linder Avenue address. Plaintiff also argued that the affidavit of due diligence filed by Kelly Doherty misidentified Mark Grena of Intelex Investigations as the process server, instead of Bachtold.

¶ 12 The record in the Harris foreclosure contains a document labeled "Corporation File Detail Report" from the Secretary of State's website, which identifies Iljco Stojanov as plaintiff's agent, shows the Linder Avenue address, and indicates that, in 2010, plaintiff was dissolved as a corporation. Bachtold's affidavit of nonservice, Doherty's affidavit of due diligence, and the Secretary of State's corporation report were filed in the Harris foreclosure on October 8, 2010, which was 3½ years before Chicago Title obtained its title commitment on May 7, 2012.

¶ 13 On May 21, 2014, the trial court granted Chicago Title's motion to dismiss under section 2-619(a)(9). Initially, the court remarked that public policy weighed in favor of protecting Chicago Title as a *bona fide* purchaser. The court stated that denying the motion to dismiss would "set a precedent for any party that ever purchased property following a foreclosure in Illinois, would never be able to safely hold title based on the possibility that some party could come in later and seek to void that judgment. It seems to me that the sheriff's sale has to confer

rights, and to say that the purchaser here needed to consider the possibility that the judgment was void when there's nothing on the record to suggest that [plaintiff's] lien had not been properly extinguished as a matter of public policy would undercut the entire purpose of the statute, the [Illinois Mortgage Foreclosure Law], and lead to chaos with sheriff's sales."

¶ 14    The court determined that Chicago Title was a *bona fide* purchaser because Chicago Title had no notice of plaintiff's claim that it had not been properly served in the Harris foreclosure. The court noted that, although the title commitment was dated May 7, 2012, and Chicago Title purchased the property on May 21, 2012, plaintiff's motion to quash service was not filed until February 7, 2013, and was not granted until October 2013.  The court ruled that, "despite the fact that certainly [plaintiff] legitimately raised a motion to quash, it doesn't change the fact that Chicago Title is, in this instance, a *bona fide* purchaser for value; and on that basis, I'm going to grant the 2-619 [motion] with prejudice."  This timely appeal followed.

¶ 15                                    II. ANALYSIS

¶ 16    On appeal, plaintiff argues that the trial court erred in determining that Chicago Title was a *bona fide* purchaser.  Specifically, plaintiff argues that Chicago Title had inquiry notice that the court in the Harris foreclosure lacked personal jurisdiction over plaintiff, such that no foreclosure judgment could be entered against plaintiff.  Plaintiff concludes that, with such notice that plaintiff's interest was not properly extinguished, Chicago Title could not reasonably rely on the judgment disclosed in the title commitment to take the property as a *bona fide* purchaser.

¶ 17    In support, plaintiff argues that the record in the Harris foreclosure provided Chicago Title with notice of plaintiff's interest.  After Chicago Title purchased the property, the court in the Harris foreclosure ruled that it lacked personal jurisdiction over plaintiff because the publication notice was improper as to plaintiff.  Citing the orders quashing service and vacating

the judgment, plaintiff concludes that Chicago Title should have known of the jurisdictional defect before purchasing the property, and therefore Chicago Title should not be afforded protection as a *bona fide* purchaser.

¶ 18    Chicago Title responds that, (1) by raising the issue for the first time on appeal, plaintiff has waived its claim that Chicago Title had inquiry notice of plaintiff's interest in the property; (2) plaintiff has forfeited any claim that Chicago Title purchased the property with actual notice of plaintiff's interest in the property; and (3) the trial court correctly concluded that Chicago Title was a *bona fide* purchaser for value.

¶ 19                                  A. Standard of Review

¶ 20    Plaintiff appeals the dismissal of the complaint under section 2-619(a)(9) of the Code. A motion to dismiss under section 2-619(a)(9) admits the legal sufficiency of the complaint and asserts affirmative matter outside the pleading that avoids the legal effect of or defeats the claim. *Relf v. Shatayeva*, 2013 IL 114925, ¶ 20. We review *de novo* the dismissal of a complaint pursuant to section 2-619(a)(9). *Glisson v. City of Marion*, 188 Ill. 2d 211, 220 (1999).

¶ 21    Chicago Title argues that, in this case, the dismissal of the complaint is subject to the abuse-of-discretion standard of review because the motion required the trial court to weigh evidence. We disagree. Whether the trial court in the Harris foreclosure obtained personal jurisdiction over plaintiff is an inquiry requiring findings of fact, but this case does not turn on that issue. Instead, the relevant issue is whether Chicago Title was reasonable in concluding that the judgment extinguished plaintiff's interest in the property. This question is answered by reviewing the record of the Harris foreclosure as it existed when Chicago Title purchased the property. Reviewing the record does not require the weighing of evidence. In granting the motion to dismiss the complaint, the trial court considered the record and heard argument

without an evidentiary hearing. Contrary to Chicago Title's assertion, whether the documents in the record show that Chicago Title had inquiry notice of plaintiff's claim is a legal question, subject to *de novo* review. Chicago Title offers no compelling reason for departing from the well-established rule of conducting *de novo* review of a section 2-619(a)(9) dismissal, and we decline to do so.

¶ 22                                    B. Forfeiture

¶ 23    Chicago Title next argues that plaintiff has waived its argument that Chicago Title had inquiry notice of plaintiff's interest. Chicago Title asserts that plaintiff has made this claim for the first time on appeal. We note that the action Chicago Title describes is more accurately called "forfeiture" instead of "waiver." See *People v. Phipps*, 238 Ill. 2d 54, 62 (2010) ("Waiver is distinct from forfeiture ***. While forfeiture applies to issues that could have been raised but were not, waiver is the voluntary relinquishment of a known right.").

¶ 24    Issues not raised in the trial court generally are forfeited and may not be raised for the first time on appeal. *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 121 (2004). However, the forfeiture rule is an admonition to the parties and not a limitation on the jurisdiction of this court. *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 504-05 (2002). In this case, plaintiff responded to Chicago Title's motion to dismiss by arguing that (1) the order confirming the sale in the Harris foreclosure was void based on improper service and (2) Chicago Title was not a *bona fide* purchaser, because it had actual notice of plaintiff's interest in the property when Chicago Title took title. On appeal, plaintiff raises the related issue of whether Chicago Title had inquiry notice.

¶ 25    Plaintiff did not raise the inquiry-notice issue in the trial court, but Chicago Title did. At the May 21, 2014, hearing, counsel for Chicago Title argued that the title commitment "made

clear that there were no outstanding title issues with respect to the property. It had specifically mentioned the [Harris] foreclosure, but there would have been nothing of record either in the foreclosure case, any recorded document, any court document, that would have alerted [Chicago Title] to any outstanding interest that any other party, including [plaintiff], could have had in the property." At the hearing, plaintiff's counsel responded that "there was a $900,000 junior lien that [Chicago Title] should have at least done more due diligence upon *** in looking into the record."

¶ 26    Thus, Chicago Title argued that there was nothing in the Harris foreclosure record that would have put Chicago Title on notice of plaintiff's interest, and plaintiff responded that Chicago Title should have been more diligent in looking into the record of the Harris foreclosure before purchasing the property. Plaintiff's appellate argument regarding Chicago Title's inquiry notice was argued to and considered by the trial court. The issue is not forfeited.

¶ 27    In a related argument, Chicago Title contends that plaintiff has forfeited any claim that Chicago Title purchased the property with actual notice of plaintiff's interest in the property. Plaintiff made that contention in the trial court, in its response to the motion to dismiss, but plaintiff does not renew the argument on appeal. Thus, we need not consider whether Chicago Title had actual notice.

¶ 28                          C. *Bona Fide* Purchaser

¶ 29    Plaintiff argues that the service by publication in the Harris foreclosure was a jurisdictional defect that was apparent on the face of the record, and therefore Chicago Title had inquiry notice of plaintiff's interest. Plaintiff concludes that Chicago Title was not diligent in investigating plaintiff's interest and may not invoke the defense of being a *bona fide* purchaser

for value. Chicago Title responds that the record did not provide such inquiry notice of plaintiff's interest.

¶ 30    A *bona fide* purchaser, one who takes title "in good faith for value," takes "free of any interests of third persons, except such interests of which he has notice." *Daniels v. Anderson*, 162 Ill. 2d 47, 57 (1994). If *bona fide* purchasers were not so protected, "our laws requiring the registration of deeds would be useless if not worse." *Petta v. Host*, 1 Ill. 2d 293, 304 (1953).

¶ 31    A judgment is not valid unless the trial court has both jurisdiction of the subject matter of the litigation and jurisdiction over the parties. *State Bank of Lake Zurich v. Thill*, 113 Ill. 2d 294, 308 (1986). "Absent a general appearance, personal jurisdiction can be acquired only by service of process in the manner directed by statute," and the Code authorizes service of process either by summons (735 ILCS 5/2-203, 2-204, 2-205 (West 2012)) or by publication and mailing (735 ILCS 5/2-206 (West 2012)). *Thill*, 113 Ill. 2d at 308. "A judgment rendered without service of process, either by summons or by publication and mailing, where there has been neither a waiver of process nor a general appearance by the defendant, is void regardless of whether the defendant had actual knowledge of the proceedings." *Thill*, 113 Ill. 2d at 308.

¶ 32    Moreover, a party attacking a judgment for lack of personal jurisdiction due to defective service of process is not restricted by either the time limitations or the "due diligence" requirements of section 2-1401 of the Code. *Thill*, 113 Ill. 2d at 308; see 735 ILCS 5/2-1401(f) (West 2012). Accordingly, a judgment rendered by a court that fails to acquire jurisdiction of either the parties or the subject matter of the litigation may be attacked at any time or in any court, either directly or collaterally. *Thill*, 113 Ill. 2d at 309.

¶ 33    Where the rights of innocent third-party purchasers have attached, a judgment can be collaterally attacked for an alleged jurisdictional defect that affirmatively appears in the record.

*Thill*, 113 Ill. 2d at 312-13 (citing Ill. Rev. Stat. 1981, ch. 110, ¶ 2-1401(e) (now 735 ILCS 5/2-1401(e) (West 2012))).  In determining whether a lack of jurisdiction is apparent from the record, we must look to the whole record, which includes the pleadings, the return on the process, the verdict of the jury, and the judgment of the court.  *Thill*, 113 Ill. 2d at 313.

¶ 34     In the Harris foreclosure, the trial court allowed Harris Bank to serve plaintiff under section 2-206(a) of the Code, which provides for service by publication in cases involving property within the jurisdiction of the court.  Section 2-206(a) requires the filing of an affidavit showing that the defendant "on due inquiry cannot be found, or is concealed within this State, so that process cannot be served upon him or her, and stating the place of residence of the defendant, if known, or that upon diligent inquiry his or her place of residence cannot be ascertained."  735 ILCS 5/2-206(a) (West 2012).  Within 10 days of the first publication, the clerk of the court is required to send a copy of the published notice "by mail, addressed to each defendant whose place of residence is stated in such affidavit."  735 ILCS 5/2-206(a) (West 2012).  Although the Code contemplates service by publication, the appellate court long ago recognized that such service is "an extraordinary means of serving notice—one unknown to the common law" and that, from the perspective of the person to be notified, it is the "least satisfactory method" of giving notice and "often it is no notice at all."  *Public Taxi Service, Inc. v. Ayrton*, 15 Ill. App. 3d 706, 713 (1973).  A party defending notice by publication "must show a strict compliance with every requirement of the statute."  *Illinois Valley Bank v. Newman*, 351 Ill. 380, 383 (1933).  With these principles in mind, we examine the claimed deficiencies in the service in the Harris foreclosure and the extent to which Chicago Title should have recognized the deficiencies before acquiring the property.

¶ 35    Plaintiff argues that, in support of its motion to quash service, it presented evidence that Harris did not effectuate service as required by statute. Specifically, plaintiff argues that Harris did not comply with section 5.05 of the Business Corporation Act of 1983 (the Act) (805 ILCS 5/5.05 (West 2012)), and sections 2-206 and 2-202 of the Code (735 ILCS 5/2-206, 2-202 (West 2012)).

¶ 36    First, section 5.05 of the Act provides that "[i]n the event of dissolution of a corporation, either voluntary, administrative, or judicial, the registered agent and the registered office of the corporation on record with the Secretary of State on the date of the issuance of the certificate or judgment of dissolution shall be an agent of the corporation upon whom claims can be served or service of process can be had during the 5-year, post-dissolution period provided in Section 12.80 of this Act, unless such agent resigns or the corporation properly reports a change of registered office or registered agent." Plaintiff contends that Harris Bank knew that plaintiff was dissolved and no longer a corporation, and therefore these statutes required Harris Bank to attempt service on Iljco Stojanov at the Linder Avenue address rather than on Dzoko Stojanov at the Pheasant Lane address. We agree.

¶ 37    The Secretary of State's corporation report shows that, in 2010, plaintiff was dissolved as a corporation. It also identifies Iljco Stojanov as plaintiff's agent and lists the Linder Avenue address in Morton Grove as the agent's address. Harris Bank filed the corporation report on October 8, 2010, in support of its motion for service by publication. Section 5.05 of the Act required Harris Bank to attempt service on Iljco Stojanov at the Linder Avenue address rather than on Dzoko Stojanov at either the Linder Avenue address or the Pheasant Lane address.

¶ 38    Second, plaintiff contends that Harris Bank did not comply with the requirements for service by publication under section 2-206. That statute requires, *inter alia*, an affidavit

"showing that the defendant resides or has gone out of this State, or on due inquiry cannot be found, or is concealed within this State, so that process cannot be served upon him or her, and stating the place of residence of the defendant, if known, or that upon diligent inquiry his or her place of residence cannot be ascertained." 735 ILCS 5/2-206(a) (West 2012). Plaintiff argues that "there was one sworn affidavit by an individual who attempted service in the record at the time [Chicago Title] gained an interest in the property" and that the affidavit "included only one address where the individual attempted service." Plaintiff concludes that the affidavit gave Chicago Title inquiry notice that Harris Bank had not undertaken a diligent inquiry into plaintiff's location, including at the Linder Avenue address. We agree with this proposition as well. The Secretary of State's corporation report identifies Dzoko Stojanov as the president of plaintiff, and his address is shown to be the Linder Avenue address, but in Niles. The Pheasant Lane address is not mentioned in the corporation report. Bachtold's affidavit of nonservice, Doherty's affidavit of due diligence, and the Secretary of State's corporation report identifying Iljco Stojanov as plaintiff's agent and showing the Linder Avenue address were filed at the same time in the Harris foreclosure on October 8, 2010, which was 3½ years before Chicago Title obtained its title commitment on May 7, 2012. Chicago Title was not required to "comb the record" in this case, but due diligence required further inquiry into these patently apparent discrepancies, which were shown in consecutive pages in the record.

¶ 39 Third, plaintiff argues that Bachtold was not authorized to act as a special process server. When Bachtold attempted service on September 12, 2010, sections 2-202(a) and 2-202(b) provided that "[a] sheriff of a county with a population of less than 2,000,000 may employ civilian personnel to serve process" and that "[s]ummons may be served upon the defendant wherever they may be found in the State, by any person authorized to serve process." 735 ILCS

5/2-202(a), (b) (West 2010). Under section 2-202, a licensed or registered private detective may serve process without court appointment only in counties with populations of less than 2 million. See *Schorsch v. Fireside Chrysler-Plymouth, Mazda, Inc.*, 172 Ill. App. 3d 993, 998 (1988). Plaintiff argues that Harris Bank did not obtain a special appointment of the court for Bachtold to serve plaintiff at the Linder Avenue address in Cook County, which had a population of more than 2 million. We need not delve into plaintiff's assertion regarding the need for a special appointment, as Harris Bank's noncompliance with other service requirements was apparent on the face of the record.

¶ 40 We conclude that the service defect appears on the face of the record to the extent that Chicago Title had inquiry notice of a lack of personal jurisdiction over plaintiff. Plaintiff identifies potential noncompliance with at least two statutes governing service by publication, and the parties agree that plaintiff's motion to quash service was granted and resulted in the foreclosure judgment being vacated as to plaintiff. The court in the Harris foreclosure found the jurisdictional defect after hearing the testimony of six witnesses and arguments by plaintiff and Harris Bank. The court did not rely solely upon the record in quashing service; but the record alone gave Chicago Title inquiry notice of a potential problem. At the time of the purchase, Chicago Title did not have the benefit of the court's factual finding of a lack of jurisdiction or the witnesses' testimony in support of that claim, but it had constructive notice of the documents submitted in support of the service by publication. Those documents, containing inconsistent information, were filed at the same time and appear in sequential pages in the record, which did not require Chicago Title to "comb the record" for the potential jurisdictional error.

¶ 41 Our decision is supported by *Thill*, which holds that innocent third-party purchasers are not protected from setting aside a judicial sale where a lack of personal jurisdiction affirmatively

appears on the face of the record. In *Thill*, the intervenors, including third-party purchasers, could not rely on the facial validity of the foreclosure proceedings where the record showed a lack of personal jurisdiction over one of the property owners. The foreclosure judgment specifically recited that " 'each of the defendants in this cause has been duly and properly brought before the court, either through service of process of summons, by appearance, or by service by publication, all in the manner as provided by law; and this court now has jurisdiction over all the parties to this cause and the subject matter hereof.' " *Thill*, 113 Ill. 2d at 313-14.

¶ 42    However, personal jurisdiction was based upon substituted service of summons, and the affidavit of service did not show strict compliance with the requirements of the statute authorizing substituted service of summons. *Thill*, 113 Ill. 2d at 314. First, the affidavit of service did not show that any summons was served, noting only service of a complaint. Second, the affidavit failed to show that an additional copy of the summons for the defendant was left with the defendant's wife. Third, the affidavit was defective because it did not affirmatively recite that a copy of the summons was subsequently mailed, in a sealed envelope with postage fully prepaid, to the defendant at the address of the subject property. Accordingly, the supreme court determined that the defects appearing on the face of the affidavit of service rendered the return defective. *Thill*, 113 Ill. 2d at 311. The supreme court held:

"[T]he alleged jurisdictional defect in this case does not require inquiry beyond the face of the record. Because the record affirmatively shows that service on the defendant was not had in the manner provided by statute, the intervenors, notwithstanding their purported status as innocent third-party purchasers, cannot rely on the jurisdictional recital in the foreclosure judgment to prevent a collateral attack on that judgment." *Thill*, 113 Ill. 2d at 314.

¶ 43    In *Thill*, the jurisdictional defect was readily apparent in that several lines on the affidavit of substitute service were left entirely blank. The affidavit omitted information for the mailing of the summons, including the location of the post office and the date of the mailing. *Thill*, 113 Ill. 2d at 300. The supreme court observed that the affidavit was defective on its face, which gave the third-party purchasers inquiry notice.

¶ 44    Here, Bachtold's affidavit of nonservice does not omit information, but rather contains allegedly erroneous information. This is a distinction without a difference, as the jurisdictional defect is readily apparent on the face of the Harris foreclosure record. The affidavit of nonservice and the corporation report, which were filed at the same time, show that service was attempted on the wrong person at the wrong address. Discovering these potential errors did not require Chicago Title to comb the record for other documents showing contrary information, including the mortgage and the corporation record on file with the Secretary of State. The mortgage, the corporation report, the due-diligence affidavit, and the affidavit of nonservice were filed at the same time. Simply reviewing the documents that supported Harris Bank's motion for service by publication would have revealed a potential jurisdictional defect worthy of further inquiry. Consistent with *Thill*, we conclude that the inconsistencies in the documents gave Chicago Title inquiry notice of the jurisdictional defect that plaintiff ultimately proved.

¶ 45    In arguing that it was a *bona fide* purchaser, Chicago Title proposes three bases on which to distinguish *Thill* from this case. Chicago Title argues that *Thill* applies to (1) collateral attacks on a foreclosure judgment but not to a new foreclosure action, like this case; (2) property owners but not junior lienholders, like plaintiff; and (3) foreclosure-judgment recitals but not a title commitment, like the one relied upon by Chicago Title. See *Thill*, 113 Ill. 2d at 314. These too are distinctions without a difference. Chicago Title overemphasizes peripheral matters and the

procedural posture of *Thill* to avoid its central holding: when an alleged jurisdictional defect does not require inquiry beyond the face of the record, and the record affirmatively shows that service on the foreclosure defendant was not had in the manner provided by statute, a subsequent purchaser may not rely on the foreclosure judgment to establish his status as a *bona fide* purchaser. Perhaps the matters raised by Chicago Title might be relevant to tailoring equitable remedies among the parties on remand, but they do not negate our holding that the jurisdictional defect was apparent on the face of the Harris foreclosure record and, therefore, Chicago Title was not a *bona fide* purchaser.

¶ 46 Like in *Thill*, the subsequent purchasers of property in *Bank of New York v. Unknown Heirs & Legatees*, 369 Ill. App. 3d 472 (2006) (*BONY*), were not *bona fide* purchasers where the record showed insufficient service on an heir of the deceased property owner. The affidavit of publication service did not affirmatively establish due inquiry and diligence. Unlike in this case and in *Thill*, the heir in *BONY* had filed a motion to dismiss, which was pending when the judgment of foreclosure was entered. *BONY*, 369 Ill. App. 3d at 474, 476-77. However, the legal proceedings in *BONY* were not necessary to give the subsequent purchasers notice of a possible outstanding interest in the property. The defective affidavit provided inquiry notice, and the pending proceedings simply drew more attention to a potential defect in personal jurisdiction. Contrary to Chicago Title's assertion, the absence of pending proceedings regarding jurisdiction in the Harris foreclosure did not negate Chicago Title's inquiry notice of the potential jurisdictional defect.

¶ 47                                    D. Public Policy

¶ 48 Plaintiff argues that, because the defect in personal jurisdiction was apparent on the record of the Harris foreclosure, the trial court erred in considering whether public policy weighs

in favor of protecting Chicago Title as a *bona fide* purchaser. The trial court cited the public policy of finality and stability of judicial sales as a basis for dismissing the complaint. In *Thill*, the supreme court addressed the public policy favoring the permanency and stability of judicial sales but ultimately held that such interests give way when the record of the judicial proceedings shows a lack of personal jurisdiction. The same balancing of the equities supports affirming the trial court's ruling in favor of the *bona fide* purchaser over a junior lienholder in this case, but public policy considerations are subordinate because the jurisdictional defect was apparent on the record of the Harris foreclosure.

¶ 49    That said, our analysis does not end with our determination that Chicago Title had inquiry notice of the jurisdictional defect in the Harris foreclosure. Chicago Title argues that the equities favor granting plaintiff relief different from the foreclosure judgment it seeks. Chicago Title distinguishes *Thill*, where the foreclosure was challenged by the property owner, from this case, where the challenge is brought by a junior lienholder. When service is challenged following a judicial sale, the relief sought by a property owner and a junior lienholder is different. A prevailing property owner is allowed to retain ownership and possession of the property, while a prevailing junior lienholder would recover repayment of a debt secured by the property.

¶ 50    In this case, the judicial sale did not result in a surplus, so plaintiff was not entitled to any of the sale proceeds. In challenging the judicial sale in the Harris foreclosure, plaintiff argued that vacating the judgment and reselling the property would result in a higher price, which would entitle plaintiff to a share of the surplus. Here, Chicago Title argues that, if plaintiff's alleged damages are measured by the amount of a potential surplus, plaintiff could prove those damages and recover from Harris Bank as the foreclosure proceeds, without dispossessing an innocent

third-party purchaser. The value of the property and the status of the Harris foreclosure inform a balancing of the equities, but we express no opinion as to where the equities lie. On remand, the parties may present their arguments on this point for the trial court to consider.

¶ 51 Chicago Title argues in its petition for rehearing that, pursuant to section 15-1501 of the Code (735 ILCS 5/15-1501 (West 2012)), plaintiff was a permissive party and not a necessary party to the Harris foreclosure; and therefore section 15-1509(c) (735 ILCS 5/15-1509(c) (West 2012)) limits plaintiff's remedy to an interest in the proceeds of the sale. Prior to the petition for rehearing, Chicago Title argued the distinction between plaintiff's interest in the property as a junior lienholder and the interest of the property owner, but never cited section 15-1501. More importantly, Chicago Title did not argue that section 15-1509(c) is a basis for affirming the judgment. Therefore, we conclude that these arguments are improperly raised in the first instance in the petition for rehearing. See *In re Leslie H*., 369 Ill. App. 3d 854, 859 (2006); see also Ill. S. Ct. R. 367(b) (eff. Dec. 29, 2009) ("the petition shall state briefly the points claimed to have been overlooked or misapprehended by the court"). In reversing the dismissal of plaintiff's complaint, we emphasize that we express no opinion as to the appropriate remedy, if any, should plaintiff prevail in this action.

¶ 52                                III. CONCLUSION

¶ 53 We conclude that Chicago Title had inquiry notice of plaintiff's interest in the property, because the defect in personal jurisdiction over plaintiff was apparent on the face of the Harris foreclosure record. Thus, we reverse the dismissal of the complaint.

¶ 54 Reversed and remanded.