(No. 19818.—)

THE CHICAGO AND NORTHWESTERN RAILWAY COMPANY, Appellee, *vs.* A. G. KENNEDY, Appellant.

*Opinion filed April 23, 1931—Rehearing denied June 3, 1931.*

HENRY W. PRENTICE, (ARCHIE G. KENNEDY, *pro se,*) for appellant.

LOWELL B. SMITH, and NELSON TROTTMAN, for appellee.

Mr. COMMISSIONER EDMUNDS reported this opinion:

On July 26, 1926, the Chicago and Northwestern Railway Company, appellee, filed a bill in the circuit court of DeKalb county to quiet title to a strip of land claimed by virtue of possession under the recorded plat of the original town of DeKalb. A. G. Kennedy, the owner of lot 4 adjoining, who was made defendant, filed an answer, setting up various insufficiencies in the plat and denying that appellee acquired any title thereunder. Kennedy also filed a cross-bill, alleging that he was the owner of the strip by virtue of *mesne* conveyances, also by adverse possession for more than twenty years, also by color of title coupled with possession and payment of taxes for more than seven years. In the course of the hearing, which was by the chancellor, appellee filed two amendments to its original bill. One of them set up adverse possession for more than twenty years, and the other claimed color of title coupled with possession and payment of taxes for more than seven years. The chancellor found that appellee had had for more than twenty years open, notorious, continuous and exclusive possession of the south seven feet of the strip in question, as shown upon a blue-print attached to the decree, and that Kennedy had had for more than twenty years open, notorious, continuous and exclusive possession of the north five feet of the strip in question, as shown by the blue-print. The decree confirmed title in these strips in the respective parties in accordance with these findings. Kennedy appealed, asking that a decree be entered awarding him the entire strip, and appellee has assigned cross-errors and asks that the decree be modified to award the entire strip to it.

The following diagram of the southern portion of lot 4 and its surroundings, based on the testimony and exhibits offered, does not represent the present usage of the property involved but is designed to indicate how it lies with reference to the railroad and to be of assistance in under-

standing the relation of past actions and events to the claims of the respective parties to the strip in question:

The disputed strip is bounded on the north by the line A—B and on the south by the line C—D. P and P indicate the location of telegraph poles, W and W represent walks and the lines S—T indicate a side-track. Explanation of the significance of these things, as well as of the line M—N, will be made in appropriate connections hereinafter.

Consideration of the case will be expedited by first disposing of the question as to whether either party, or both, can claim possession of the strip under color of title. Appellant's claim in this regard is based upon the description contained in the deed to himself and in previous deeds in his chain of title, and appellee's claim is based upon the original plat of the town of DeKalb. The chancellor found that neither party had paper title to the strip. This finding was well warranted. Appellant acquired title to the hotel property by a deed which described it as lot 4, as per recorded plat of same. This plat shows no dimensions of the

lot in question. Appellant's own theory is that this plat, which shows a right of way for appellee's predecessor, does not constitute color of title for appellee because it shows no dimensions thereof and for various other reasons does not comply with the statutory requirements as to plats. Appellant points to several conveyances of his property, made at an early date, in which there appeared the following language: "Beginning at the corner of Main and Fourth streets, fronting one hundred and fifty-four feet on Main street and one hundred four feet on Fourth street." Taking the view most favorable to appellant, the boundary resulting from giving effect to such language would run approximately along the line M—N in the above diagram, and only a portion of the disputed strip could be said to be included by the description. In view of this fact, and the further consideration that no such language appears in later deeds, there is no sufficient ground for holding that appellant held color of title to the disputed strip. As to appellee's claim of color of title, it is urged that the plat appears to be drawn to scale; that the boundary line can be located very closely, and surveyors have done so; that reference to the original plat, in connection with other later plats introduced in evidence, will remove all doubt as to description; that one hundred feet is the usual width of a right of way in Illinois and is the width provided for in the general Railroad law; that one hundred feet is the width shown in later plats, and that such width accords with railway maps and plats in evidence; that therefore it appears that a right of way one hundred feet wide was conveyed by the original plat, and that proceeding on this basis would bring the strip within appellee's possession under color of title. The purported right of way is shown on that plat by three lines extending easterly from its western edge and south of the property here involved to the east side of Fifth street. The outer lines supposedly represent the boundaries of the right of way and the middle line the original track. With a slight

jog at Fifth street this middle line continues on east. The outer lines already referred to stop at Fifth street. Two other lines, much farther apart from each other and from the middle line than are the outer lines west of Fifth street, start at Fifth street and continue on east. The outer lines west of Fifth street do not appear, from the exhibit, to be parallel. Along the middle line west of Fifth street appear these words: "Right of way for G. and C. U. W. B. Railroad and," and along the same line east of Fifth street appear the words "Depot grounds." No figures showing the distances between these several lines anywhere appear. Moreover, although the plat indicates the dimensions of all the lots west of Fifth street which do not have the right of way for a boundary, the lengths of the east and west lines of lots bordering on the north and south sides of the right of way, including lot 4, are not marked on the plat. The evidence of surveyors who had done much work in DeKalb was to the effect that the location of the plat on the section cannot be determined with any degree of accuracy from the plat; that any survey made can determine only the present actual location of streets, alleys, lots and blocks on the ground and cannot determine that such present location agrees with the original location of the plat on the section; that the monuments from which surveys testified to were made were monuments fixed by the surveyors themselves by taking into consideration the actual location of streets, alleys, etc., and not from any established monument shown by the plat, and that although the plat may appear to be drawn to scale it cannot be "scaled" with absolute accuracy because of errors in the drawing and resulting from contraction of the paper. The rule is, that in an instrument relied upon as color of title the premises must be described therein with the same degree of .certainty as in an absolute conveyance. (*Hanna* v. *Palmer,* 194 Ill. 41.) Assuming that color of title could be held to be given by a duly executed plat clearly describing the property in-

volved, it would be going too far to say that appellee holds under color of title under all the circumstances shown here.

It is evident, therefore, that we are not here dealing with the ordinary situation where one party holds paper title to certain land and the question is whether title to such land has ripened in another by virtue of adverse possession by the latter, and although neither appellant nor appellee can be said to have shown a paper title to the disputed strip, inasmuch as the original plat of the town of DeKalb referred to in appellant's deed, and upon which appellee relies, shows that appellee's right of way is bounded on the north by lot 4, no basis is shown for rights of anyone else in the disputed strip. In the last analysis the controversy between appellant and appellee really resolves itself into a question as to the location of the boundary line between their respective holdings, the circumstances being such that the location of that line has never been definitely established.

The Supreme Court of Massachusetts dealt with a similar situation in *Thacker* v. *Guardenier, 7* Metc. 484. In that case there was a writ of entry to recover a narrow strip of land about nineteen feet in length and twenty-seven or twenty-eight inches wide. The evidence tended to show that the demandant, whose land lay to the east of the tenant's land, formerly had a shed standing on the line where a fence stood at the time of suit, which shed had stood there since 1816, and that the shed had eaves extending at one end eight inches and at the other end five or six inches over the strip in controversy. Chief Justice Shaw said: "At the first trial the demandant established by documentary evidence a good title to land bounding westerly on the tenant or his ancestors and the tenant a good title to land bounding easterly on the demandant or his ancestors, but neither the admeasurements nor the monuments referred to in the description had settled where that dividing line was. In this state of the case it was held that it must be determined by the question of prior possession. Upon the last trial it

was supposed, upon the facts testified and which are not contested, that as far as the evidence went there remained only a question of law, and a *pro forma* opinion was given and no fact was left to the jury. But it now appears that the parties cannot agree as to a fact supposed to be conceded, namely, whether the demandant first erected his shed or whether the tenant first enclosed and improved his land. The court are of the opinion that in the absence of proof, under the documentary title fixing the boundary between the parties by monuments, admeasurement or otherwise, the title of either will be inferred from occupation, and in that respect the prior actual occupation will be proof of prior and better title. But the question recurs, what shall be deemed proof of possession and occupation? Upon this point we are of opinion that if a person builds a house near the line of his land, with eaves, it ought to be far enough from the line of his land to allow for eaves-droppings on his own land, and that the presumption is, in the absence of proof, that he does so. If, then, he erects a building with eaves it will be regarded as making some use of the land under the eaves, and, as such, an occupation thereof, and if this is prior to any cultivation or other actual use of the adjacent land it is a prior occupation. If the owner of the adjacent land afterwards cultivates the land quite up to the line of the building and under its eaves, it cannot be regarded as a disturbance or interruption of the possession already taken by the owner of the building, because it is not inconsistent with the only use which he has had occasion to make, and has been actually making, of the land by his eaves. * * * It therefore follows that as the title depends upon prior possession and occupancy, the owner of the building, with his eaves, or the adjacent owner of the soil enclosed, will be deemed to have the prior possession and the elder title, as the one or the other first took possession in either of the modes indicated. This rule, as before stated, applies only where the line is left doubtful

by the evidence of title and where neither party can claim under any higher title than possession."

The rule thus announced is sensible and sound, and the circumstances of the present case are such as to make it directly applicable. Under the evidence disclosed, the disputed strip was first occupied by appellant's predecessors in title, such acts of occupancy commencing around the time of the Civil War and taking the form of building the corner of the hotel porch, which encroached upon it, building the walks (W and W) and digging a well, which was near the corner of the porch. It follows that title to the strip in its entirety must be held to have become vested in such predecessors, and appellant holds it by virtue of *mesne* conveyances from them.

Appellee relies, nevertheless, upon a number of considerations which must be taken into account before appellant's right to the strip can be regarded as having been conclusively determined. Thus, considerable stress is laid upon an alleged admission by W. P. Ballou, who owned lot 4 between 1888 and 1895, that "the east end of the porch was on railroad land," testimony to the effect that he heard his father say this being given by W. L. Ballou, a son. Appellee also calls attention to appellant's conduct in 1907, when, after an argument with appellee's agents, he allegedly altered his plans for re-building the porch and cut off its southeast corner so that it did not occupy the entire space previously occupied. Conceding that admissions were made by Ballou as claimed, and that appellant did, as a result of a dispute, alter the plans for re-building to the extent claimed, it does not follow that title to the strip was thereby divested. As the court said in *Illinois Central Railroad Co. v. Wakefield*, 173 Ill. 564: "The question is not one of estoppel, nor of settling disputed boundary lines, nor whether the premises were held adversely to the real owner, but simply whether parol declarations of one having title to real

estate can be availed of as transferring his title to another. That they cannot, seems to us too clear for argument."

Appellee relies strongly upon the maintenance by it of the telegraph poles, (P and P,) the side-track, (S-T,) and the cutting of grass and removal of rubbish from the strip. The evidence bearing on these acts does not go back of the 1880's. Inasmuch as title to the strip must be regarded as having been previously vested in appellant's predecessors in title, and inasmuch as appellee never enclosed the strip and had no paper title to it, appellee's rights could not under any theory extend beyond the limits prescribed in *Bristol* v. *Carroll County,* 95 Ill. 84, where the court said: "The doctrine seems to be that when an usurper enters upon land he acquires possession, inch by inch, of the part which he occupies, and that the mere naked possession, without color of title, is adverse only to the extent of the actual enclosure, which must be definite and notorious." Granting the adverse maintenance, for the statutory period, of the poles and side-track, the most that could be awarded appellee would be ground actually occupied by them, which is not described with sufficient precision to make it identifiable. As a matter of fact, the evidence bearing on these phases of the case is in sharp conflict. The chancellor made no finding as to the maintenance of the poles. He did find specially that appellee "for more than twenty years prior to the filing of the bill herein, and until a short time prior to the filing of said bill, maintained a railway track at the east end of said real estate, extending thereon for a distance of approximately one-third the east and west length thereof." In the light of direct testimony that this side-track was constructed with appellant's permission, the absence from the finding of a statement that such maintenance was adverse is not without significance, and that the decree was not based upon such finding follows from the fact that, according to the blue-print annexed, one rail of this side-track lies upon the five-foot strip awarded to appellant. The picking up of

rubbish and the mowing of weeds did not constitute acts sufficient in themselves to uphold a claim of actual and exclusive possession. (*Illinois Central Railroad Co.* v. *Hasenwinkle*, 232 Ill. 224; *McCloskey* v. *Hayden*, 169 id. 297; *Harms* v. *Kransz*, 167 id. 421; *Hayden* v. *McCloskey*, 161 id. 351.) Moreover, it must be borne in mind that while all these several acts were allegedly being performed by appellee, appellant or his predecessors in title (being at the outset in possession of the strip) continued to demonstrate actively their possession, not only by maintaining the porch, walks and well, but by setting out flower beds and dumping ashes and cinders on various portions thereof. It is impossible that two persons or corporations should each be in the actual, exclusive and hostile possession of one and the same premises at one and the same time, and when there is an actual possession and occupancy by one there is no place or room for a constructive and hostile possession by another. (*Illinois Central Railroad Co.* v. *Moore*, 160 Ill. 9.) The conclusion necessarily following an analysis of the record is that the state of the evidence is such that appellee cannot predicate upon it any rights adverse to those of appellant.

The chancellor erred in awarding only the north five feet of the strip to appellant. The decree is reversed and the cause remanded, with directions to enter a decree awarding appellant the entire disputed strip.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Edmunds is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded, with directions.*