CATHY TERRILL, Plaintiff-Appellee, v. OAKBROOK HILTON SUITES AND GARDEN INN, L.L.C., d/b/a Hilton Suites and Garden Inn, Defendant-Appellant.

Second District    No. 2—02—0415

Opinion filed April 21, 2003.

Howard W. Foster, Robert J. Comfort, and Steven A. Marderosian, all of Johnson & Bell, Ltd., of Chicago, for appellant.

Vincent L. DiTommaso and Peter S. Lubin, both of DiTommaso-Lubin, of Oakbrook Terrace, for appellee.

JUSTICE BYRNE delivered the opinion of the court:

Defendant, Oakbrook Hilton Suites and Garden Inn, appeals the denial of its motion to involuntarily dismiss with prejudice the complaint brought by plaintiff, Cathy Terrill. Defendant contends that the trial court erred in concluding that section 3(f) of the Hotel Operators' Occupation Tax Act (Act) (35 ILCS 145/3(f) (West 2000)) barred plaintiff from directly suing defendant.

The pleadings, affidavits, depositions, and exhibits establish the following undisputed facts. Plaintiff rented a room from defendant for the night of November 25, 1999. The sign-in form states that rates are "subject to applicable sales, occupancy or other taxes." On November 26, 1999, plaintiff received and paid the bill from defendant for renting the room.

The bill is the only document that defendant provided to plaintiff that purports to list all of the charges, including the telephone charge, that defendant asked plaintiff to agree to pay. The bill states that the contractually agreed-upon "Nightly Room Rate," excluding taxes and other variable incidental charges, such as telephone or room service charges, is $99. The bill designates a single tax line item entitled "Room Occupancy Taxes," which shows a total of $8.91. Plaintiff paid the full amount of the bill without an objection, including the $8.91 listed as taxes.

Defendant kept the $99 room rate, and from the $8.91 billed as "taxes," forwarded 6% of the room rate in tax liability to the state, 1% in tax liability to the City of Oakbrook Terrace (Oakbrook Terrace), and 2% to Oakbrook Terrace pursuant to an agreement between defendant and Oakbrook Terrace, in which defendant had agreed to pay 2% of its gross revenue as a service fee to Oakbrook Terrace in exchange for daily city police surveillance of the hotel.

The sign-in document that was presented to plaintiff on the night of November 25, 1999, does not state that the $99 rate (plus applicable taxes) is subject to a municipal security fee or any municipal service charges. The sign-in document contains no language wherein the customer expressly agrees to pay a security fee or any type of municipal service charge. Nor does it state or disclose that a security fee will later be included as part of the "Room Occupancy Tax" line item in the bill. Based on the standardized documents and information that defendant provided to her, at all relevant times plaintiff understood that she was agreeing to pay a $99 daily room rental charge, applicable taxes, and usage charges she incurred for itemized

services such as telephone calls and room service. Room charges, taxes, and useage charges would be tabulated and agreed to by plaintiff when she paid a final truthful and accurate bill. Because it was concealed from her, plaintiff did not know that defendant was including a security fee, which was not a tax, in the tax line item in her bill, and therefore she could not protest or voluntarily pay such charge.

Plaintiff brought a class action suit against defendant for breach of contract and consumer fraud. Defendant filed, *inter alia*, a motion to dismiss the complaint under section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 2000)), arguing that section 3(f) of the Act and supreme court precedent barred plaintiff from directly suing defendant for the 2% charge.

The circuit court disagreed and denied defendant's motion. The court then certified the following question pursuant to Supreme Court Rule 308(a) (155 Ill. 2d R. 308(a)):

> "Does 35 ILCS 145/3(f) bar a direct action by a consumer against a retailer when the retailer has collected a security fee under the guise of a hotel tax and remitted the security fee to Oakbrook Terrace for payment of security services, a non-tax obligation, and where the consumer did not request a refund prior to the time the payment was remitted to the hotel and to Oakbrook Terrace?"

■ Defendant timely filed an application for leave to appeal and we granted the application. Because this appeal concerns a question of law certified by the circuit court pursuant to Rule 308, because it presents a question of statutory interpretation, and because it arose in the context of an order denying a section 2—619 motion to dismiss, our review is *de novo*. See *Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.*, 186 Ill. 2d 472, 480 (1999).

■ Before we address the certified question, we must address a motion to supplement the record brought by plaintiff, which we ordered to be taken with the case. Plaintiff requests that we supplement the record with (1) a letter from plaintiff's counsel to the trial judge and (2) plaintiff's response to defendant's Rule 308 motion. Upon review of the motion, we deny the motion to supplement the record with the letter from plaintiff's counsel but allow the motion to supplement the record with plaintiff's response to defendant's Rule 308 motion. Accordingly, the motion is granted in part and denied in part.

■ Turning now to the certified question on appeal, we begin our analysis by looking at the language of the applicable statute. Section 3(f) provides:

> "If any hotel operator collects an amount (however designated) which purports to reimburse such operator for hotel operators' oc-

cupation tax liability measured by receipts which are not subject to hotel operators' occupation tax, or if any hotel operator, in collecting an amount (however designated) which purports to reimburse such operator for hotel operators' occupation tax liability measured by receipts which are subject to tax under this Act, collects more from the customer than the operators' hotel operators' occupation tax liability in the transaction is [*sic*], the customer shall have a legal right to claim a refund of such amount from such operator. However, if such amount is not refunded to the customer for any reason, the hotel operator is liable to pay such amount to the Department." 35 ILCS 145/3(f) (West 2000).

■ The legislature's intent in enacting a statute is best determined by the plain and ordinary meaning of the statutory language. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 193 (1997). When the language of a statute is clear and unambiguous, the court must give it effect without resorting to other aids of construction. *Chicago Flood Litigation*, 176 Ill. 2d at 193. Courts should read statutes so as to yield logical and meaningful results and to avoid constructions that render specific language superfluous or meaningless. *Rochelle Disposal Service, Inc. v. Pollution Control Board*, 266 Ill. App. 3d 192, 198 (1994).

Defendant essentially raises the same arguments on appeal as it did before the circuit court. Defendant contends that the statute mandates that all persons who have been overtaxed "however designated" must claim a refund from the hotel in order to obtain restitution. Defendant asserts that, if the customer fails to obtain a refund "for any reason," the hotel is obligated to pay the entire tax collected to the Department of Revenue. Defendant asserts that the supreme court in *Adams v. Jewel Cos.*, 63 Ill. 2d 336 (1976), specifically held that, once the retailer remits the overtax to the Department, the overtaxed customer cannot sue the retailer directly. *Adams*, 63 Ill. 2d at 346. Because defendant remitted the overcharge to Oakbrook Terrace, which defendant asserts is synonymous with the Department, defendant contends that the statute applies to bar plaintiff's claim against defendant.

Plaintiff counters that section 3(f) only frees a hotel from liability from *tax* overcharges when it passes the entire overcharge to the Department of Revenue as a tax payment and is not thereby unjustly enriched. Plaintiff asserts that section 3(f) deals with payments to the Department for which the only monies due are tax payments. Plaintiff argues that, in this case, Oakbrook Terrace, unlike the Department, collects monies from defendant for nontax as well as tax liabilities. As such, defendant did in fact benefit from the overcharge since it used it

to pay a nontax liability after charging its customers more than the contractually agreed-upon room charge. Under these circumstances, where the tax overcharge was not passed on to the taxing authority in the form of a tax payment, plaintiff contends that section 3(f), by its express language, is inapplicable.

We agree with plaintiff that section 3(f) covers circumstances involving tax overcharges, as a portion of the statute clearly allows reimbursement where the hotel, in collecting an amount "which purports to reimburse" the hotel for its "operators' occupation tax liability measured by receipts which are subject to tax under this Act, collects more from the customer" than the amount of the tax liability transaction. 35 ILCS 145/3(f) (West 2000). However, it is equally clear that another portion of section 3(f) also encompasses situations involving nontaxable charges as well.

Here, defendant charged and collected from plaintiff a security fee under the guise of a hotel tax. To paraphrase the statute, once defendant included the nontaxable security fee charge within the same line as the charge designated "Room Occupancy Taxes," defendant collected an amount that purported to reimburse defendant for its operators' occupation tax liability measured by receipts that were *not* subject to defendant's occupation tax. See 35 ILCS 145/3(f) (West 2000).

While we find that the statute encompasses nontaxable charges as well as tax overcharges, defendant's interpretation of the meaning of "Department" and its subsequent conclusion that the statute therefore bars plaintiff's suit against it is untenable at best. Defendant asserts that Oakbrook Terrace is a municipal government with the power to collect local taxes. Defendant contends that it complied with the statute because it paid plaintiff's "overtax funds" to Oakbrook Terrace and therefore the statute and *Adams* apply to bar plaintiff's claims. Defendant, however, ignores that the statute expressly states that "if such amount is not refunded to the customer for any reason, the hotel is liable to pay the overcharge to the Department." The Act defines "Department" as the "Department of Revenue" (35 ILCS 145/ 2(7) (West 2000)). Oakbrook Terrace is not the Department of Revenue.

We note that, when a hotel operator incorrectly designates a service fee under the guise of a hotel operators' tax, if such amount is not refunded to the customer, the hotel operator is responsible for remitting this to the Department of Revenue. See 35 ILCS 145/3(f) (West 2000). By rendering the hotel operator liable for the disputed amount if the occupant does not collect the refund, the legislature removes the hotel's incentive to overcharge, thereby ensuring the underlying legislative policy against unjust enrichment.

In this case, plaintiff alleges that defendant used her money to pay a nontax liability and charged her more than she contractually agreed upon. Under the plain meaning of the statute, because defendant never remitted the nontaxable charge to the Department, plaintiff has a legal right to claim a refund. As such, defendant cannot rely on section 3(f) of the Act to bar plaintiff from suing defendant.

We find that the case of *Adams*, relied on by defendant, has no bearing on the present case. *Adams* involved a question pertaining to a consumer's right to proceed against a retailer for an overcharge in taxes that was remitted by the retailer to the Department of Revenue. The supreme court interpreted the language used in section 3 of the Use Tax Act (35 ILCS 105/3 (West 2000) (formerly Ill. Rev. Stat. 1971, ch. 120, par. 439.3)) to determine that the plaintiffs could not directly sue the retailer-defendants for the remitted excessive taxes. Unlike in the present case, where the 2% nontax charge for security services was never remitted to the Department of Revenue, in *Adams*, the entire tax overcharge was passed on to the Department of Revenue. The distinction between a nontaxable charge and a tax overcharge is not relevant under the statute. Instead, the case turns on whether the retailer tenders the disputed amount to the Department, as in *Adams*, or the vendor, as in the present case. Moreover, unlike the situation here, in passing the entire tax overcharge to the Department, the retailer in *Adams* was no longer directly liable for the overcharge because it did not unjustly enrich itself at the expense of the consumer.

■ It is clear, given the facts of this case, that defendant misapprehends the concept of accountability. Because defendant remitted the 2% service fee to Oakbrook Terrace instead of the Department, defendant cannot use the Act or case law to shield itself from direct liability. Unjust enrichment principles are based on the idea that no one ought to enrich himself unjustly at the expense of another. See *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 500 (2001). This basic concept was illustrated in *Harrison Sheet Steel Co. v. Lyons*, 15 Ill. 2d 532 (1959), in which the court cited the following example:

> " 'A purchases goods from B, it being agreed that B is to pay a supposed sales tax thereon with money supplied by A. A pays B $1,000, in addition to the purchase price, to pay the tax. No tax is due. A is entitled to restitution.' " *Harrison*, 15 Ill. 2d at 536-37, quoting Restatement of Restitution § 48, Illustration 3, at 197 (1937).

■ Here, accepting plaintiff's allegations as true, as is required when deciding a section 2—619 motion to dismiss (see *CDG Enterprises*, 196 Ill. 2d at 486), we conclude that defendant has unjustly enriched itself by using the monies it collected from the tax line item

in the customer bill to pay for ordinary vendor services. The end result is that defendant is inflating the tax line item and using purported tax revenues to pay off a normal nontax contractual obligation and charging its customers more than the contractually agreed-upon room charge to pay off a normal, nontax operating expense. Thus, defendant, at the very least, is unjustly enriching itself at the expense of plaintiff and others similarly situated. Under these circumstances, section 3(f) does not bar plaintiff's claims, either under the express language of the statute or under the case law interpreting its effect.

■ Before closing, we feel compelled to comment on the excessive use of footnotes used by the parties in their briefs. Supreme Court Rule 341(a) (177 Ill. 2d R. 341(a)) states that "[f]ootnotes, if any, shall be used sparingly." Supreme Court Rule 344(b) (155 Ill. 2d R. 344(b)) also indicates that "[f]ootnotes are discouraged." Combined, the parties' briefs contain 19 single-spaced footnotes. The voluminous information contained in these footnotes more properly belongs in the body of the text. All of the footnotes are single spaced and are set in minuscule type. This is not using footnotes "sparingly" and is inexcusable given the unequivocal language of Supreme Court Rule 341(a). We admonish the parties for failing to comply with Rule 341(a), and we strongly discourage the use of footnotes in future briefs submitted to this court.

For the foregoing reasons, we answer the certified question in the negative.

Certified question answered.

BOWMAN and KAPALA, JJ., concur.