OTTO BEITNER *et al.*, Plaintiffs-Appellees, v. CHRISTOPHER MARZAHL *et al.*, Defendants-Appellants (Unknown Owners and Nonrecord Claimants, Defendants).

Second District   No. 2—03—1377

Opinion filed December 9, 2004.

E. William Maloney, Jr., of Maloney, Craven & Longstreet, P.C., of Des Plaines, for appellants.

144

Doreen T. Paluch, of Curt P. Rehberg & Associates, P.C., of Crystal Lake, for appellees.

JUSTICE KAPALA delivered the opinion of the court:

Defendants, Christopher Marzahl and Linda J. Marzahl, appeal from an order of the circuit court of McHenry County that quieted title to a disputed strip of land on defendants' southern boundary in favor of plaintiffs, Otto Beitner and Ann Beitner, by adverse possession. We affirm in part, vacate in part, and remand with directions.

## FACTS

In 1978, plaintiffs purchased property on Zarnstorff Road in Spring Grove, McHenry County, from James and Patricia Ruemelin. This parcel was part of a larger tract that the Ruemelins owned. The Ruemelins desired to convey to plaintiffs a parcel that measured 330 feet on the west side, 325 feet on the east side, and approximately 799 feet east to west. To accomplish this, James Ruemelin hired Charles Mionske, a registered land surveyor, to plat a survey. Ruemelin furnished Mionske with the legal description of the parcel to the north and Mionske based his survey on that description. The parcel that Mionske surveyed in 1978, and that plaintiffs purchased, was 6.082 acres.

The property to the north of plaintiffs' parcel was owned by George and Doris Redmann, who took title in 1973. Mionske's 1978 survey shows a wire fence that runs generally east and west just south of the Redmanns' southern boundary and strays slightly onto plaintiffs' property, as the fence was depicted in the survey. The fence, known as the Redmann fence, commences at the northeast corner of plaintiffs' property and abruptly ends a short distance before it reaches the western boundary. At all times during plaintiffs' occupancy of their property and while George Redmann was alive, he owned and maintained the fence.

When plaintiffs bought their property, it was all in pasture. They built a house and driveway on the western part of the parcel facing Zarnstorff Road and used the remainder for crops and farm animals. Plaintiffs occupied their property up to the Redmann fence but never occupied any property north of the fence. This "fence line" was observed even in the westernmost area of plaintiffs' property, where no physical fence exists. Plaintiffs planted evergreens and mowed their grass in this area along an imaginary extension of the fence line.

In 1994, defendants purchased the parcel north of plaintiffs' property from George Redmann's estate. Defendants, like the Redmanns, occupied their property south to the fence, and plaintiffs continued to occupy their property north to the fence. The parties found this situation livable until a developer started surveying the

property north of defendants' parcel. Christopher testified that he came home one day and saw a "white stake with a big red head" in his front yard. It was "obvious when I pulled in my driveway like [*sic*] somebody was surveying and it wasn't me," he testified. Seeing survey stakes in his yard prompted Christopher to commission a resurvey of his property. Land Technology, Inc., performed the resurvey in December 1999. This survey fixed defendants' southern boundary south of the Redmann fence. In response to seeing survey stakes on their property, plaintiffs in turn ordered a resurvey of their property. Mionske resurveyed in July 2000. Mionske's resurvey disclosed a strip of land along the northern boundary of plaintiffs' property that is 13.24 feet wide at plaintiffs' northwest corner and 16.63 feet wide at plaintiffs' northeast corner. The Redmann fence is situated within this strip. Mionske called this strip a "deed overlap" because, as a result of a discrepancy between the Marzahl and Beitner deeds, there is an overlap of property descriptions seemingly granting both parties legal title to this strip. Trouble ensued between plaintiffs and defendants.

On July 19, 2001, plaintiffs filed an amended complaint to quiet title to this overlap strip. On August 6, 2003, after a trial without a jury, the trial court made written findings of fact and conclusions of law. The trial court awarded "the subject 13 feet" to plaintiffs, by adverse possession, finding that plaintiffs have "openly, continuously and hostilely occupied the subject property for a period in excess of twenty years." Defendants filed a timely appeal.

## DISCUSSION

Before we address defendants' contentions, we must dispose of a preliminary matter. Plaintiffs filed a motion to strike defendants' opening brief or alternatively to strike the statement of facts. We ordered that motion taken with the case. Plaintiffs find fault with defendants' argumentation, lack of citation to the record, and extensive use of footnotes. But plaintiffs also recognize that we will strike a brief in whole or in part only where the violation of the rules is so flagrant as to hinder or preclude review. *Amcore Bank, N.A. v. Hahnaman-Albrecht, Inc.*, 326 Ill. App. 3d 126, 134 (2001).

Plaintiffs first contend that the statement of facts is "replete" with argument and commentary, in violation of Supreme Court Rule 341(e)(6) (210 Ill. 2d R. 341(e)(6)). That rule requires in part that the statement of facts contain "the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal." 210 Ill. 2d R. 341(e)(6). The appellate court has held that argumenta-

tive language is inappropriate for a statement of facts and against the mandate of the rule. *Cottrill v. Russell*, 253 Ill. App. 3d 934, 938 (1993). We find plaintiffs to be overly technical about the argumentative nature of the statement of facts, except for one objection they raise. Defendants' discussion of the trial court's order is blatantly argumentative. Any statement that is argumentative or made without reference to the record need not be considered by this court. *Bank of Chicago v. Park National Bank*, 277 Ill. App. 3d 167, 168 (1996). Accordingly, we will ignore any argument made by defendants in their reference to the trial court's order.

Plaintiffs next complain that a summary descriptive passage that begins the statement of facts contains no references to the appropriate pages of the record. This is true, and defendants acknowledge that this technically violates the rule. However, this passage is approximately one page long and merely orients the reader to the geographical location of the property in dispute, and the remainder of the statement of facts is sufficiently compliant with the rule with respect to record references. While defendants are not free to indulge in stylistic flourishes at the expense of supreme court rules, we believe that it would be unduly harsh for us to strike the brief or portions of it for this minor transgression.

Plaintiffs' last contention in their motion is that defendants violated Supreme Court Rule 341(a) (210 Ill. 2d R. 341(a)), which provides in part that "[f]ootnotes, if any, shall be used sparingly." This objection deserves comment. There are 17 single-spaced footnotes in the statement of facts alone that are used to annotate the statement of facts. The facts of this case are not so complex that these footnotes are needed or desirable. Ideally, any information defendants consider important enough to convey to this court should be included in the body of the brief. We echo our comment in *Terrill v. Oakbrook Hilton Suites & Garden Inn, L.L.C.*, 338 Ill. App. 3d 631, 638 (2003), that this excessive use of footnotes in violation of the rule is "inexcusable." However, because we are able to glean the necessary facts from the record, we elect to consider this appeal on the merits and, accordingly, deny the motion to strike defendants' brief or the statement of facts.

■ We turn now to the merits of this appeal. Defendants' first contention is that plaintiffs' amended complaint did not invoke the trial court's jurisdiction. Defendants argue that the amended complaint sought to quiet title to their entire parcel and not specifically to the overlap strip. Defendants cite *Zygmuntowicz v. Pepper Construction Co.*, 306 Ill. App. 3d 182, 185 (1999), for the proposition

that where a formal pleading does not present an issue for adjudication, the trial court lacks subject matter jurisdiction to decide that issue. This is a misinterpretation of *Zygmuntowicz*. In *Zygmuntowicz*, the trial court in a negligence case was held not to have jurisdiction to apportion damages between the defendant Pepper and the codefendant Merchandise Mart, where Pepper never filed a cross-claim against Merchandise Mart requesting such relief. *Zygmuntowicz*, 306 Ill. App. 3d at 183-84. The appellate court held that a party cannot be afforded relief, despite the admission of evidence supporting that relief, absent a corresponding pleading, such as a cross-complaint. *Zygmuntowicz*, 306 Ill. App. 3d at 184. In our case, plaintiffs filed a pleading in the trial court requesting the relief of quiet title to land that included the overlap strip and, therefore, the pleading was sufficient to invoke the trial court's jurisdiction.

■ Defendants' second contention is that the trial court's finding that plaintiffs acquired title to the overlap strip by adverse possession is against the manifest weight of the evidence. Defendants maintain that plaintiffs did not establish the location of the boundary of the land that they were claiming and that the evidence was clear that plaintiffs did not occupy the entire overlap strip, but only that portion of it up to the Redmann fence. As an alternative, defendants ask us to fix the fence as the boundary pursuant to the doctrine of boundary by acquiescence. Plaintiffs contend that defendants waived consideration of the doctrine of boundary by acquiescence because that issue was not presented to the trial court. Generally, issues raised for the first time on appeal are waived. *Daley v. License Appeal Comm'n*, 311 Ill. App. 3d 194, 200 (1999). However, this rule is not rigid and inflexible. *Daley*, 311 Ill. App. 3d at 200. The rule of waiver is an admonition to the litigants, not a limitation upon the jurisdiction of the reviewing court. *Daley*, 311 Ill. App. 3d at 200. Therefore, we recognize that the responsibility of a reviewing court for a just result and for the maintenance of a sound and uniform body of precedent may sometimes override the considerations of waiver pursuant to Supreme Court Rule 366(a)(5) (134 Ill. 2d R. 366(a)(5)). *Daley*, 311 Ill. App. 3d at 200. We believe that this is such a case, and, as both parties have briefed the issue, we will entertain defendants' argument that the legal principle of boundary by acquiescence applies here and that the Redmann fence was accepted by the parties as the boundary. Because we find this issue to be dispositive, we will not address whether the evidence supports the trial court's finding that plaintiffs own the overlap strip by adverse possession.

■ In *McLeod v. Lambdin*, 22 Ill. 2d 232, 235 (1961), our supreme court stated:

"Where a boundary between two tracts is unascertained or in dispute, the line may be established, first by parol agreement and possession; second, by an agreement implied from unequivocal acts and declarations of the parties and acquiescence for a considerable period of time; and third, in the absence of any agreement, by undisturbed possession for more than twenty years. When an unascertained or disputed boundary is actually established under *either* or all of these alternative methods, it will be binding on the parties and their privies in estate and may be enforced or protected in an appropriate action in equity." (Emphasis added.)

In that case, for more than 20 years before litigation began, the occupants of adjoining parcels of land "recognized, utilized and accepted" a hedge fence as the line between the two tracts. *McLeod*, 22 Ill. 2d at 234. After the hedge fence was removed, the landowners followed an arrangement whereby they would erect an electric fence along the line of the former hedgerow in the fall and remove it in the spring to facilitate planting. *McLeod*, 22 Ill. 2d at 234-35. Each owner cultivated his side up to the old hedgerow line. *McLeod*, 22 Ill. 2d at 235. However, after the defendants acquired one of the tracts, they asserted ownership, not to the fence line, but beyond it to a government survey line. *McLeod*, 22 Ill. 2d at 235. Our supreme court declared, "We believe that the many years during which the respective owners farmed up to the hedgerow and utilized it as a fence to contain their cattle fairly implies their agreement to establish and recognize the hedgerow as the boundary line." *McLeod*, 22 Ill. 2d at 235-36.

■ We believe that *McLeod* governs the case before us. The Mionske resurvey of plaintiffs' property done in July 2000 was introduced into evidence as plaintiffs' exhibit No. 9. This document clearly delineates the dimensions of the overlap strip. Mionske testified that this overlap occurred as a result of a discrepancy in the legal descriptions in both parties' deeds. Thus, the boundary between the Marzahl parcel and the Beitner parcel was unascertained. The legal description in the Redmann deed is the same as the legal description in the Marzahl deed, which means that the boundary was also unascertained during the Redmanns' occupancy.

All of the evidence established that plaintiffs occupied the land only up to the Redmann fence and that the Redmanns (George after Doris's death) and then defendants occupied everything north of the fence. Plaintiffs admitted that their use and possession never expanded north of the fence. The parties observed this fence line even in the area where the physical fence was nonexistent. Plaintiffs planted evergreens in spaces where, when they grew large, they would not intrude over the imaginary fence line, and a photograph in evidence

shows that plaintiffs mowed up to this line. All of the evidence demonstrated that plaintiffs never exercised any dominion or control over the property north of the fence. Likewise, the Redmanns and defendants treated the fence as their southern boundary. James Ruemelin testified that George Redmann erected the fence. Ann testified that the Redmanns always occupied their property to the fence and that George Redmann was "emphatic" about the fence being his boundary. Photographs in evidence from the late 1970s show that plaintiffs grew crops up to the fence line and that the Redmanns had livestock and housing for livestock just north of the fence. Ann testified that after defendants purchased the Redmann parcel, they occupied it to the fence line and not beyond. Thus, *McLeod*'s requirement of an agreement implied from unequivocal acts is satisfied.

For the doctrine of boundary by acquiescence to apply, *McLeod* also requires that the parties acquiesce for a considerable period of time. George and Doris Redmann acquired what is now the Marzahl tract in 1973. Doris died and then George died. George Redmann's estate conveyed the tract to defendants in 1994. Plaintiffs obtained title to their tract from the Ruemelins in 1978. From 1978 until this dispute arose in 2000, plaintiffs accepted the Redmann fence as their northern boundary. While defendants recognized the fence as their southern boundary for a period of six years before this dispute arose, the Redmanns' prior recognition of the fence as the boundary is tacked onto the time defendants utilized the fence as the boundary. See *McLeod*, 22 Ill. 2d at 234-35 (tacking periods from 1912 to 1955). Thus, the fence was recognized and utilized as the boundary for at least 22 years. We believe this fulfills the requirement that the parties acquiesce for a considerable period of time.

Plaintiffs draw our attention to *Hartzler v. Uftring*, 114 Ill. App. 3d 427, 431 (1983), where the Fourth District Appellate Court held that the parties must have disputed the true boundary line before coming to an agreement to resolve the dispute by recognizing a boundary line. *Hartzler* held that a current dispute between the parties in court will not suffice to invoke the application of the doctrine of boundary by acquiescence. *Hartzler*, 114 Ill. App. 3d at 431. However, *Hartzler* relied on *Jones v. Scott*, 314 Ill. 118 (1924). *Jones* was decided long prior to *McLeod*, and our supreme court in *McLeod* required no such evidence of a prior dispute. The evidence in *McLeod* was that the landowners for many years amicably used the hedgerow and later the electric fence as the boundary. *McLeod*, 22 Ill. 2d at 234-35. We agree with the Third District's opinion in *Boyer v. Noirot*, 97 Ill. App. 3d 636, 639 (1981), that the fact that the line is now in dispute is sufficient to bring the case within the scope of the doctrine of boundary

by acquiescence. Moreover, we note that *McLeod* requires that the boundary be either unascertained or disputed, but not both. *McLeod*, 22 Ill. 2d at 235.

In the alternative, defendants assert that they should be awarded the entire overlap strip. Their theory is that the Redmanns, from whom defendants received their deed, preceded the Ruemelins, from whom plaintiffs received their deed, in title and, therefore, defendants' claim to the disputed property has priority. Defendants cite *Rohde v. Rohn*, 232 Ill. 180 (1907), and *Chicago & Northwestern Ry. Co. v. Kennedy*, 344 Ill. 309 (1931). These cases are distinguishable. *Rohde* decided the priority of two equitable mortgagees and did not involve boundary by acquiescence. *Rohde*, 232 Ill. at 190. *Kennedy* involved a suit to quiet title where neither party could show a paper title to the disputed strip and the location of the boundary had never been definitely established. *Kennedy*, 344 Ill. at 314. The supreme court awarded the disputed strip to the railroad because the railroad's predecessors in title first occupied it. *Kennedy*, 344 Ill. at 316. However, in so ruling, the court pointed out that this rule applies only where the line is left doubtful by the evidence of title and where neither party can claim under any higher title than possession. *Kennedy*, 344 Ill. at 315-16. In our case, both sides can claim a higher title than possession because both sides have deeds to the disputed property.

Defendants' last contention is that plaintiffs should be denied equitable relief because of unclean hands. The clean hands doctrine prohibits one seeking equity from taking advantage of his own wrong. *Brown v. Ryan*, 338 Ill. App. 3d 864, 875 (2003). The party making the contention must prove that the other party is, in fact, guilty of fraud or bad faith toward the party making the contention. *Brown*, 338 Ill. App. 3d at 875. It is within the sound discretion of the trial court whether to apply the doctrine, and its application is not favored. *Brown*, 338 Ill. App. 3d at 875. The evidence showed that when defendants hired Land Technology, Inc., to resurvey their property, the surveyor planted survey stakes in what plaintiff Otto Beitner considered his yard. Otto pulled the stakes out of the ground. Defendants claim that by declining to invoke the doctrine of clean hands, the trial court trivialized Otto's misconduct. We reject this contention. Pulling up the stakes did not defraud defendants, nor did that act constitute bad faith in the sense that defendants were prejudiced by the conduct. Otto acted under the belief that whoever placed the stakes was trespassing on his property. Under these circumstances, we believe that the trial court did not abuse its discretion in refusing to apply the clean hands doctrine.

Accordingly, we hold that the Redmann fence is the boundary

between plaintiffs' and defendants' properties. We affirm that part of the trial court's order that awards plaintiffs the overlap strip up to the fence. We vacate the remainder of the trial court's order and remand this cause with directions to enter a decree awarding plaintiffs that portion of the overlap strip, as represented on the July 2000 Mionske survey, that is south of the Redmann fence and south of the extended fence line west of where the physical fence ends, and awarding that portion north of the Redmann fence and extended fence line to defendants.

Affirmed in part and vacated in part; cause remanded with directions.

GROMETER and GILLERAN JOHNSON, JJ., concur.