2022 IL App (1st) 210962-UB

No. 1-21-0962

Order filed December 19, 2022.

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| *In re* ORDER OF PROTECTION: | ) | Appeal from the |
| | ) | Circuit Court of |
| COLLEEN CARRILLO, | ) | Cook County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | No. 2021 OP 71090 |
| v. | ) | |
| | ) | |
| ENRIQUE TERAN, | ) | The Honorable |
| | ) | Thomas M. Cushing, |
| Respondent-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE LAVIN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*: Initially, even though the expiration of the protective order at issue rendered this appeal formally moot, the issues are reviewable under the public interest exception to the mootness doctrine. Additionally, the circuit court did not abuse its discretion in questioning petitioner at the hearing on her request for a plenary order of protection where the questioning was neutral, for clarification purposes and shed light on material allegations regarding petitioner's alleged abuse by respondent. Finally, the court did not err in granting petitioner the plenary order of protection where there was sufficient evidence presented that she was abused by respondent. We affirm.

¶ 2     Respondent Enrique Teran filed the present appeal from the circuit court's domestic relations order entered on July 14, 2021. In that interlocutory order, the circuit court granted petitioner Colleen Carrillo's request for a plenary order of protection against respondent. This court previously dismissed this appeal for lack of jurisdiction. Respondent filed a petition for leave to appeal with the Illinois Supreme Court, and on September 28, 2022, the supreme court denied his petition but issued a supervisory order directing us to vacate our prior judgment and consider this appeal, including "the issues of whether the appeal is moot and whether any exceptions to the mootness doctrine apply." In accordance with the supreme court's direction, we now consider respondent's appeal.

¶ 3     On appeal, respondent challenges the circuit court's entry of the plenary order of protection against him, arguing first that the lower court improperly acted as an advocate for petitioner, rather than as an impartial trier of fact, at the plenary hearing. Respondent further argues that this court must vacate the protective order because the evidence was insufficient to support a finding of abuse under the Illinois Domestic Violence Act.[1] We disagree, and for the reasons that follow, we affirm the circuit court's judgment.

¶ 4                                    I. BACKGROUND

¶ 5     In February 2021, petitioner, acting *pro se*, filed a verified petition for an emergency order of protection against respondent. In it, she alleged that respondent was her ex-boyfriend, and that the two of them ended their relationship on January 24, 2021. Petitioner further alleged that, on January 24, 2021, she and respondent had an argument at her apartment, located at 901 West Argyle Steet in Chicago. At some point during their argument, respondent "shoved

_____

[1]Petitioner elected to not file an appellate brief in this matter; thus, this court entered an order on February 16, 2022, taking the case on the record and respondent's brief only. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976) (permitting a reviewing court to decide a case on the record and the appellant's brief only).

[petitioner] into a concrete wall" while she was placing his belongings outside her apartment. Petitioner alleged that respondent "attempted to take a jacket with [her] spare apartment keys in the pocket." Petitioner ultimately filed a police report (No. JE124878) for domestic battery stemming from that incident.

¶ 6     Petitioner alleged that, following the incident on January 24, 2021, respondent tried to contact her on multiple occasions. Specifically, she alleged:

> "Since our breakup on or about January 24, 2021, [r]espondent has been calling and texting me at off hours and from different numbers as I block every number he contacts me from. Respondent knows I do not want any contact with him."

Additionally, petitioner alleged that, on February 14, 2021, respondent "showed up at [her] apartment *** unannounced and uninvited," even though they had broken up "nearly three weeks ago, and [r]espondent knew [she] wished to have no contact with him." Nevertheless, that day, respondent sent petitioner flowers and "called and texted [her] multiple times, none of which [she] answered." Respondent "directed a friend of his to call [petitioner] because [she] wouldn't answer for [him]." Respondent even "took a photo of [petitioner's] car in its parking spot and sent it to [her]."

¶ 7     The next day, respondent called petitioner again. Petitioner alleged this "made [her] afraid that he may be outside of [her] apartment like he [had been] the day before." Consequently, petitioner filed another police report (No. JE142718), this time for harassment. Undaunted, respondent viewed petitioner's LinkedIn page on February 16, 2021, leading petitioner to block him on the social media site. According to petitioner, there was a history of physical abuse throughout the parties' relationship, including instances where respondent "grabbed [petitioner's] arms forcefully, thr[ew her], pushed [her], held [her] down, and raised his

hand to strike [her] (which [she] usually ducked from)." Finally, petitioner alleged that respondent drank "heavily, which aggravate[ed] his abusive behavior."

¶ 8    After hearing testimony from petitioner, who represented herself *pro se*, the circuit court issued petitioner an emergency order of protection against respondent, which remained in effect until March 11, 2021.[2] The emergency protective order, however, was later extended to remain in effect until April 12, 2021. Meanwhile, respondent moved, successfully, for a substitution of judge as a matter of right.

¶ 9    The circuit court extended the emergency order of protection for a third time so that it remained in effect until the hearing for a plenary order of protection on July 13, 2021. At that hearing, petitioner testified about the allegations of abuse set forth in her petition, as well as other instances of abuse not mentioned in the petition. As will be discussed in more detail below, the circuit court judge asked petitioner various questions related to her prior relationship with respondent and the events that took place on the night of January 23, 2021, into January 24, 2021, and on February 14, 2021, among other things. Respondent also testified as to those events, providing some conflicting testimony, namely, that he never physically abused petitioner.[3] The circuit court ultimately concluded that petitioner showed respondent had abused her in violation of the Illinois Domestic Violence Act and issued petitioner a one-year plenary order of protection against respondent. The plenary order of protection has since expired, which we will address below.

¶ 10    This appeal followed.

¶ 11                                    II. ANALYSIS

---

[2]Petitioner represented herself *pro se* throughout the proceedings below.
[3]We note that, after respondent presented her case in chief, respondent moved, unsuccessfully, for a directed finding.

¶ 12                                    A. Mootness Doctrine

¶ 13     Initially, we must address the threshold issue of whether this appeal is moot since the plenary order of protection at issue here expired on July 13, 2022, and if so, whether an exception to the mootness doctrine applies. A case on appeal is moot when the issues involved no longer exist because events occurring after the filing of the appeal make it impossible for the reviewing court to grant effective relief. *Lutz v. Lutz*, 313 Ill. App. 3d 286, 288 (2000). Even assuming the expiration of the protective order rendered this appeal formally moot, we find the issues are reviewable under the public interest exception to the mootness doctrine. See *Benjamin v. McKinnon*, 379 Ill. App. 3d 1013, 1020 (2008) (applying the public interest exception to the mootness doctrine to an expired order of protection); *Lutz*, 313 Ill. App. 3d at 288 (same); *Whitten v. Whitten*, 292 Ill. App. 3d 780, 784 (1997) (same).

¶ 14     Turning to another preliminary matter, we observe that respondent's statement of facts contains improper argument and sets forth facts that are inaccurate and misleading. For example, respondent stated that, at the plenary hearing, the circuit court judge asked petitioner to "describe hearsay communications she had with [respondent's] friends." The report of proceedings from that hearing, however, indicates that some of those communications consisted of text messages between petitioner and respondent's friend, and the circuit court judge correctly observed that "whether or not it's hearsay, depends on what's contained in there." Additionally, in his statement of facts, respondent stated, "[s]hockingly, Judge Cushing objected to a number of the questions posed by [respondent's] counsel during her cross-examination of [petitioner]," noting, "[i]n particular, Judge Cushing intervened and precluded [respondent's] counsel from asking initial questions or additional follow-up questions *** related to" petitioner's behavior on January 24, 2021. Because this language clearly is argumentative, it does not belong in

respondent's statement of facts. Illinois Supreme Court Rule 341(h)(6) (eff. May 25, 2018) provides that an appellant's statement of facts must be "stated accurately and fairly without argument or comment, and with appropriate references to the pages of the record on appeal." Accordingly, we will not consider any statements made by respondent that are argumentative and therefore in violation of that rule. See *Beitner v. Marzahl*, 354 Ill. App. 3d 142, 146 (2004).

¶ 15          A. The circuit court's questioning of petitioner

¶ 16    We now turn to the merits of respondent's appeal. As stated, respondent claims that the circuit court abused its discretion when it questioned petitioner at the plenary hearing. See *In re Tamesha T.*, 2014 IL App (1st) 132986, ¶ 21 (reviewing the lower court's questioning of the witness for an abuse of discretion). Specifically, respondent argues that the court's questioning of petitioner during the hearing was not neutral, nor for clarification purposes, but instead, was aimed to elicit testimony that was favorable to petitioner.

¶ 17    A circuit court judge may question witnesses to elicit truth, clarify ambiguities in the witness's testimony or shed light on material issues. *In re Tamesha T.*, 2014 IL App (1st) 132986, ¶ 26. While a judge is given wider latitude in examining witnesses in a hearing, it cannot depart from its function as a judge and may not assume the role of an advocate for either party. *Id.* Moreover, the "propriety of an examination of a witness by the [circuit] court must be determined by the circumstances of each case and rests within the discretion of the [circuit] court." (Internal quotation marks omitted.) *Id.*

¶ 18    Section 214 of the Illinois Domestic Violence Act of 1986 (Act) (750 ILCS 60/214(b) (West 2020)) provides, in relevant part, what a petitioner must show to obtain an order of protection. *Stapp v. Jansen*, 2013 IL App (4th) 120513, ¶ 15. If the circuit court finds that the petitioner has been abused by a person defined in the Act, it shall issue an order of protection

prohibiting the abuse. 750 ILCS 60/214(a) (West 2020); see also *Jansen*, 2013 IL App (4th) 120513, ¶ 15. Our supreme court has clarified that such findings of abuse made under the Act are reviewed under the manifest-weight-of-the-evidence standard. *Jansen*, 2013 IL App (4th) 120513, ¶ 16 (citing *Best v. Best*, 223 Ill.2d 342, 349–50 (2006)). A finding is against the manifest weight of the evidence only when the opposite conclusion is clearly evident or where the court's findings are unreasonable, arbitrary and not based on any of the evidence. *Jansen*, 2013 IL App (4th) 120513, ¶ 16. In reviewing the circuit court's findings, we are mindful that the lower court, as the finder of fact, was in the best position to observe the conduct and demeanor of the parties. *Id.* ¶ 17. Thus, where a conflict in the witnesses' testimony exists, we will not substitute our own judgment for that of the circuit court by reweighing the evidence. *Id.* Finally, a "reviewing court should not overturn a [circuit] court's finding of fact merely because it might have reached a different decision." (Internal quotation marks omitted.) *Id.*

¶ 19    After reviewing the record in this case, we cannot say that the circuit court's questioning of petitioner was an abuse of discretion. The record shows that the circuit court judge questioned petitioner to elicit truth concerning the allegations in her petition, clarify her testimony and shed light on material issues regarding the alleged abuse by respondent. For example, the judge asked petitioner about the events surrounding February 14, 2021, when respondent sent her flowers, as well as a picture of her car in its parking spot with the wiper blades upright (which, incidentally, was done by respondent), even though the parties had ended their relationship on January 23 – 24, 2021, and petitioner had not answered any of respondent's subsequent attempts to communicate with her. When asked how respondent's behavior made her feel, petitioner responded that she felt like "the abuse was never going to end." The judge then asked petitioner, "[a]nd the abuse was him continually trying to contact you by text and phone call?" This

question was made for clarification purposes, not to elicit testimony from petitioner that was unfavorable to respondent, as respondent has suggested.

¶ 20     And, it should be noted that, shortly thereafter the judge posed a question to petitioner that elicited a response that was arguably favorable to respondent. The judge asked petitioner how she felt after receiving a note from respondent with the flowers he sent her that read, "may you always find happiness in the future." Petitioner replied, "I thought that maybe that meant he was going to leave me alone." Although the judge then asked petitioner whether respondent did in fact leave her alone to which she replied "No, your Honor," the judge's questioning did not advocate for petitioner, but instead, shed light on her allegations of abuse and harassment by respondent. Furthermore, the judge's questioning of petitioner clarified several ambiguities related to communications between the parties during their relationship and after their relationship had ended, including the fact that respondent stopped trying to communicate with petitioner once the emergency order of protection against him was issued.

¶ 21     While respondent claims the lower court judge asked petitioner open-ended questions that were meant to elicit testimony that was unfavorable to him, the examples set forth in his brief do not support that conclusion. Respondent asserts that the judge improperly questioned petitioner about what names respondent had called her during their argument on January 23 – 24, 2021, but the record shows that this line of questioning was meant to clarify the nature of the name calling. Petitioner testified that she did not recall the specific names respondent had called her, so the judge asked her whether he called her "insulting names" or "by [her] own name." Likewise, regarding petitioner's testimony that respondent grabbed her arm, the judge asked her to clarify the nature of respondent's behavior when he allegedly grabbed her, stating:

"Do you recall what [respondent's] demeanor [was] when he did that? Was this something that was in the course of an argument? Was it angry? Was it playful? Was it accidental? What was your perception?"

Even assuming, *arguendo*, that these questions were open-ended, they did not amount to an abuse of discretion since they were designed to elicit further clarifying information that was essential to the adjudication of the issues of abuse before the court, and those questions could have elicited a response favorable to respondent if, for example, petitioner had responded that he had called her by her own name, rather than insulting names, and that his demeanor had been playful, rather than angry.

¶ 22    We also reject respondent's claim that the judge's questioning was inappropriate because it sought information outside the four corners of petitioner's affidavit, which was attached to her petition. As set forth above, this line of questioning was meant to clarify the events that unfolded during the parties' relationship, including before and after it ended, and was relevant to adjudicating whether petitioner made a sufficient showing of abuse under the Act. Notwithstanding, respondent has not cited any legal authority to support his claim that the judge's questioning of petitioner was limited to only what was mentioned in her affidavit. Rather, respondent has set forth conclusory allegations about the judge's questioning of petitioner that we have already determined have no merit.

¶ 23    Finally, to the extent respondent asserts that the circuit court judge improperly denied his motion for a directed finding and denied him the opportunity to make a closing argument, respondent did not object at the plenary hearing or even request to make a closing argument, nor did he raise these issues in a postjudgment motion, thereby forfeiting them for review. See

*People v. Brant*, 394 Ill. App. 3d 663, 676-77 (2009) (noting that "[b]oth a contemporaneous objection and a written posttrial motion are required to preserve an issue for appellate review").

¶ 24     Forfeiture aside, the circuit court did not refuse "to allow [respondent's] counsel to present a full argument in support of her Motion for a Directed Finding." The record shows that, when respondent's counsel offered "to go through argument on that [motion]," the court stated: "I don't think *** it will be necessary. I'm going to deny the motion at this point." The court's statement that no further argument was necessary does not equate to refusing to allow respondent to present a full argument on his motion. What is more, respondent's counsel did not object when the court indicated that it did not need to hear further argument, but said, "Okay." Likewise, the court did not deny respondent the right to present a closing argument. The record shows that, after both parties finished presenting their evidence, the judge indicated that he would review that evidence and return shortly with a decision. At no point did respondent object or request to make a closing argument. Accordingly, we cannot say that these actions by the lower court amounted to an abuse of discretion or that they deprived respondent of a fair hearing.

¶ 25                                    B. The circuit court's finding of abuse

¶ 26     Next, respondent argues that the circuit court's finding of abuse was against the manifest weight of the evidence because none of the evidence presented established that he had abused petitioner in violation of the Act. We disagree.

¶ 27     In this case, both parties admitted that their relationship was often tumultuous. Petitioner testified that, throughout the course of the parties' relationship, respondent physically abused her. Specifically, petitioner testified that one night during the summer 2020, respondent was "intoxicated and aggravated with [her]" and that he "grabbed [her] arm" and pulled her onto the bed with him. Petitioner described respondent's behavior that night as "angry." Aside from that

instance, petitioner testified that respondent twice raised his hands "as if to strike [her]" and, on five to seven occasions, that he physically abused her, causing "minor bruising" on her wrists. Further, petitioner testified that during the course of the parties' argument on January 23 – 24, 2021, respondent yelled at her, pushed her into a wall, and attempted to a take a jacket with her spare keys inside the pocket.

¶ 28 Respondent, on the other hand, testified that he never physically abused petitioner. Regarding the events on January 23 – 24, 2021, respondent testified that petitioner would not let him grab his things so that he could leave her apartment. Yet, respondent also testified that petitioner threatened to use pepper spray if he didn't leave her apartment, leading him to call the police. And, although respondent testified that petitioner screamed and swore at him, he later testified that petitioner "doesn't use profanity." In any event, both parties' testimony established that they agreed to end their relationship at that time. Yet, respondent continued to contact petitioner in the following weeks by phone, text, email and social media, and sent her flowers. And even though petitioner did not answer respondent's repeated calls and texts, he nevertheless went to her parking lot where he removed snow from her car, positioned her windshield wipers upright, and then sent her a photograph of the car and wipers.

¶ 29 While the circuit court heard conflicting testimony from the parties, it apparently found petitioner's testimony more credible in comparison to respondent's testimony. As stated, we will not substitute our judgment for that of the trier of fact in the area of witness credibility. The evidence presented was sufficient to support the court's finding of abuse. Petitioner's testimony supported the allegations in her petition that respondent "grabbed [her] arms forcefully, thr[ew] her], pushed [her], held [her] down, and raised his hand to strike [her]." Therefore, we cannot say that the circuit court erred in granting petitioner a plenary order of protection against respondent.

¶ 30                              III. CONCLUSION

¶ 31     For the reasons set forth above, the judgment of the circuit court is affirmed.

¶ 32     Affirmed.